## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TRAVIS WADE BRADEN,** | |
| **Plaintiff,** | |
| | **Case No. 23-cv-03588-SPM** |
| **v.** | |
| **CITY OF BENTON,** | |
| **DAVID BARTONI,** | |
| **ANTHONY SKOBEL,** | |
| **KYLE BACON,** | |
| **KEVIN ROYE,** | |
| **MATHEW PEMBERTON,** | |
| **JACOB BARTONI,** | |
| **PATRICK GALLAGHER,** | |
| **C/O LAMPLEY,** | |
| **PAUL TART,** | |
| **GERALD DORRIS,** | |
| **NURSE STEPHANIE,** | |
| **SHAWN BECKEMEYER,** | |
| **ADVANCED CORRECTIONAL** | |
| **HEALTHCARE,** | |
| **FRANKLIN HOSPITAL,** | |
| **DAVID RIOS,** | |
| **HALINA JANDURA-CESSNA,** | |
| **PAUL LINDNER,** | |
| **ANN LYTLE,** | |
| **KENNETH JACOBS,** | |
| **LENON BRODIE,** | |
| **GAVIN GUNTER,** | |
| **BRANDON WILSON,** | |
| **STEVE HOLLAND,** | |
| **DEREK MUELLER,** | |
| **ALEX GALIOTO, and** | |
| **PAUL URASKI,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Travis Braden, an inmate with the Illinois Department of Corrections currently

incarcerated at Illinois River Correctional Center, filed this action under 42 U.S.C. § 1983 for alleged constitutional and state law violations that occurred during his pretrial detention at Franklin County Jail. This case is now before the Court for screening of the Complaint under 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *Id.*

**COMPLAINT**

On December 2, 2021, Plaintiff was arrested for possession of methamphetamine, aggravated fleeing and alluding police, and possession of drug paraphernalia. (Doc. 1, p. 50). Plaintiff was taken to the Franklin County Jail. During the intake process, Plaintiff was still heavily under the influence of methamphetamines. Correctional Officer Mathew Pemberton asked Plaintiff about what had happened to his left pinky finger, and Plaintiff told him that while at the Saline County Jail, he severed it off intentionally using the sliding cell door. Pemberton did not inquire further about the incident, other incidents of self-harm, or Plaintiff's state of mind. Plaintiff was "dressed out," and placed into general population. (*Id.*).

On December 5, 2021, Plaintiff was under mental distress due to the effects of detoxing from the methamphetamine, the recent death of a friend, and the hospitalization of his father. (Doc. 1, p. 50). Plaintiff used the intercom to ask about speaking with a crisis mental health counselor and medical staff. Plaintiff was informed that a correctional officer would come and speak to him, but no one ever came. (*Id.*). The next day, on December 6, Plaintiff asked Correctional Officer Pemberton to speak with a crisis counselor and medical staff. (*Id.* at p. 51). Pemberton informed Plaintiff that the only way he could see a counselor is if Plaintiff communicates that he wants to kill himself and goes on suicide watch. Plaintiff said he was feeling depressed and concerned about his father, and if he did not speak to a counselor, he would harm himself. Pemberton mocked Plaintiff and said, "you will run out of fingers before you see a counselor here." (*Id.*).

A few hours later, Plaintiff attempted to sever his right pinky by slamming it in the cell door. (Doc. 1, p. 51). That same day, Plaintiff was taken to Franklin Hospital. He was seen by Dr. Jandura-Cessna, who gave Plaintiff sutures, took x-rays, prescribed medication, and gave jail staff instructions that a follow-up was needed the following day. Plaintiff was not asked by Dr. Jandua-Cessna or jail staff about his self-harming behavior. When Plaintiff returned to Franklin County Jail, he was placed into a suicide smock and holding cell. (*Id.*). The next day, Plaintiff did not have a follow-up appointment with Dr. Jandua-Cessna for his finger as directed. (*Id.*). According to Plaintiff's medical records, prison staff attempted to make a follow-up appointment for Plaintiff at an "ortho center" but the doctor would not treat Plaintiff since the injury was the result of self-harm. (Doc. 1-2, p. 14). Plaintiff was seen at the Orthopedic Institute of Southern Illinois on December 14, 2024. (*Id.* at p. 14, 18).

Plaintiff was seen by Nurse Stephanie on December 13, 2021, for a mandatory physical. (Doc. 1, p. 29). Even though he was on suicide watch, she did not conduct a suicide screening assessment. (*Id.*). Plaintiff asked Nurse Stephanie about mental health care, and she told him that there was not crisis care at the facility. (*Id.* at p. 51).

On December 16, 2021, Plaintiff was released from the holding cell and returned to general population without being seen by a crisis team counselor or receiving a mental evaluation. (Doc. 1, p. 52). Within hours, Plaintiff injured his right pinky again by smashing it using a folding bench. Plaintiff was not given medical attention that day and was placed in a restraint chair for several hours. He asked for emergency medical care and to speak to a crisis care counselor from Jail Administrator Anthony Skobel, Captain Kyle Bacon, Lieutenant Kevin Roye, and Nurse Stephanie, but his requests were denied. (*Id.*). Plaintiff was seen by medical staff the following day on December 17. (Doc. 1-2, p. 15). A call was placed to an outsider provider, Dr. Young, requesting an appointment. (*Id.*).

On December 20, 2021, Plaintiff was seen by a nurse and Dr. Beckemeyer. (Doc. 1, p. 52; Doc. 1-2, p. 17). Dr. Beckemeyer did not provide any medical treatment during this appointment. Dr. Beckemeyer again placed a call to Dr. Young and scheduled an appointment for December 23, 2021. Plaintiff was placed in segregation. (*Id.* at p. 53). Plaintiff saw an outside medical provider at the Orthopedic Institute on December 23, 2021. In the medical records Plaintiff submitted as exhibits, it is recorded that the injury did not require surgery, and that Plaintiff was given a splint and a prescription for Norco. (Doc. 1-2, p. 22). Plaintiff states he was not provided the Norco prescription. (Doc. 1, p. 52). The medical records indicate he was prescribed 1000mg of Tylenol two times a day. (Doc. 1-2, p. 22). According to the records, it was reported that Plaintiff removed his splint. (*Id.* at p. 17). Plaintiff wrote grievances about experiencing pain and requesting the pain medication and physical therapy that the outside doctor had prescribed. (Doc. 1, p. 52; Doc. 1-2, p. 25-26).

On January 2, 2022, while Plaintiff was still in segregation and on suicide watch, he was permitted to purchase two e-cigarettes from the commissary. (Doc. 1, p. 53). In front of Correctional Officer Bartoni, Plaintiff swallowed one of the e-cigarettes. Plaintiff claims he was immediately placed in a four-point restraint chair as punishment. When Plaintiff was removed from the chair, he swallowed the second e-cigarette in front of Bartoni and another officer named Melton. He was again placed in the restraint chair. Plaintiff states that this maximum restraint was unnecessary, as staff could have placed him in a suicide cell without access to materials that he could use to self-harm. (*Id.*). When told about the incident, Dr. Beckemeyer told staff that the e-cigarettes would pass without intervention. Even though the cigarettes contain lithium batteries, Dr. Beckemeyer said the "hearing aid batteries are the batteries to worry about." From January 2 through January 9, 2022, Plaintiff did not receive medical or mental health treatment. (*Id.*).

Plaintiff was finally seen by a medical provider at the jail on January 10, 2022. On January

11, 2022, x-rays were taken of Plaintiff's stomach, which showed no obstruction, blockage, or impaction. (Doc. 1, p. 55; Doc. 1-2, p. 30, 33). On January 12, 2022, Dr. Beckemeyer recommended a "GI referral." (Doc. 1-2, p. 30). Plaintiff was taken to the Franklin Hospital emergency department later that day on January 12. (Doc. 1, p. 55, Doc. 1-2, p. 36-40). At the hospital, Plaintiff was treated by Dr. Rios, who prescribed a laxative. Plaintiff refused to take the medicine and requested an alternative treatment plan, surgery, a scope, or a colonoscopy. (*Id.*). Dr. Rios informed Plaintiff that he had spoken with other surgeons, and they all agreed surgery was not needed, but Plaintiff continued to refuse the laxative. (*Id.*). Plaintiff returned to Franklin County Jail. At the jail, Plaintiff spoke to Captain Kyle Bacon. Plaintiff told Bacon that he would do whatever it took and would kill himself if he was not taken back to the hospital for surgery to remove the e-cigarettes. (Doc. 1, p. 56). Bacon told Plaintiff that he does not offer any help to someone that harms himself. (*Id.*).

On January 14, 2022, Plaintiff was seen by an outside gastroenterologist, Dr. McCann. (Doc. 1, p. 57; Doc. 1-2, p. 44). Dr. McCann directed that Plaintiff be taken to SIH Herrin Hospital for further evaluation. (Doc. 1, p. 57-58; Doc. 1-2, p. 46). Plaintiff had a colonoscopy on the following day, and the e-cigarettes were removed. (Doc. 1, p. 57).

Once he returned to Franklin County Jail, Plaintiff was placed on suicide watch. (Doc. 1, p. 59). He was given a mask, toothbrush and toothpaste, an ink pen, and a smock. Plaintiff was not given a mattress, blanket, or books. Plaintiff was not allowed phone calls, any kind of messaging, or visits. Plaintiff asked Correctional Officer Toni Frayser for a "mental health request." Plaintiff was told that he had to place his request to Paul Tart, the new mental health liaison, on the electronic kiosk. Plaintiff, however, was not allowed access to the kiosk since he was on suicide watch. He became more mentally distressed, and on January 19, 2022, he swallowed a metal wire, his toothbrush, and the ink pen. He was observed swallowing these objects by jail staff and was

immediately placed in the four-point restraint chair. (*Id.*). Plaintiff began spitting up blood and was taken to the emergency room at Franklin Hospital. (*Id.* at p. 59-60; Doc. 1-2, p. 52).

Plaintiff was treated by Dr. Paula Lindner who ordered outpatient x-rays. (Doc. 1, p. 60). Dr. Lindner told jail staff that there was no serious obstruction and that follow-up x-rays should be taken to ensure clearance of the ingested objects. Plaintiff believes that Dr. Lindner did not adequately treat him, and upon his return to Franklin County Jail, he swallowed a straw found in the backseat of the patrol car. He was placed again in the four-point restraint chair. (*Id.*). X-rays were taken on January 22, 2022. (Doc.1-2, p. 58).

On January 23, 2022, Plaintiff swallowed two paperclips found in his segregation cell in order to force staff to admit him to a hospital for medical and mental health treatment. (Doc. 1, p. 60). Plaintiff was taken again to the emergency room at Franklin Hospital and then to SIH Carbondale Memorial Hospital. Plaintiff had an EGD to remove the objects. (*Id.*).

Upon his return from the hospital, on January 24, 2022, Plaintiff was placed in holding cell 4, which contained broken glass. (Doc. 1, p. 61). Plaintiff swallowed the glass so that he would be taken to the hospital, but instead, Sergeant Dorris removed Plaintiff from his cell and had him sit on a bench in the foyer. Dorris retrieved the four-point restraint chair, placed it next to Plaintiff, and then went back to the control room. (*Id.* at p. 61-62). While Dorris was away, Plaintiff removed a carabiner clip from the restraint chair and swallowed it. (*Id.*). Plaintiff was then taken to the emergency room at St. Francis Medical Center in Cape Girardeau, Missouri. (*Id.* at p. 63). After a few days of being monitored, an exploratory laparotomy was performed, and it was determined that the carabiner would pass through the colon without "having to make any type of enterotomy or colotomy." (Doc. 1-2, p. 87; Doc. 1, p. 64). One of the doctors at the hospital, Dr. Foley, informed Plaintiff that he might be released with the carabineer still in his intestines. (*Id.* at p. 64).

During his stay at the hospital, Plaintiff overheard phone conversations between

Correctional Officer Pemberton, Correctional Officer Ann Lytle, and Sheriff David Bartoni. (Doc. 1, p. 64). During the conversations, Pemberton told Lytle that the jail could not afford the hospital bills associated with Plaintiff's continued care and that human resources were exhausted since Plaintiff required two armed guards to stay with him out of state at the hospital while they waited for him to pass the carabiner. The sheriff instructed the correctional officers to inform medical staff at the hospital that the jail had the required medications and a medical unit where Plaintiff could be kept. The correctional officers were to persuade the medical staff to release Plaintiff so that he could pass the carabiner at the jail. (*Id.*). On February 3, 2022, Plaintiff heard Pemberton and Lytle discussing that Sheriff Bartoni had orders that when they return to the jail he was to be placed in the restraint chair until he passed the carabiner. Plaintiff overhead the officers making jokes about him being placed in the chair. (*Id.*).

Both officers spoke with Dr. Foley, and Dr. Foley told Plaintiff that he would be discharged. (Doc. 1, p. 65). Dr. Foley stated that he was promised that Plaintiff would be placed into the medical unit at the jail and would receive the same standard of care and medications that Plaintiff would receive at the hospital. (*Id.*). Plaintiff became angry that Pemberton and Lytle had convinced Dr. Foley that he would receive adequate care at the jail. (*Id.* at p. 66). Plaintiff asked for a second opinion. Dr. Foley left the room and returned twenty-minutes later. He informed Plaintiff that he had spoken with another doctor who agreed with the discharge plan. There was no discussion about Plaintiff having to be placed in the four-point restraint chair upon his return to Franklin County Jail. (*Id.*).

During the discharge process, on February 4, 2024, Plaintiff was given a pen to sign paperwork. (Doc. 1, p. 67). Plaintiff swallowed the pen. He was then taking to the operating room, and an EGD was performed to remove "a plastic pen ink cartridge with metal tip." (Doc. 1-2, p. 88). Plaintiff was discharged later that day. (Doc. 1, p. 68). Upon his return to Franklin County

Jail, he was placed in the four-point restraint chair. (*Id.*). Plaintiff remained in the chair over the weekend until February 7, 2022. (Doc. 1, p. 72). Plaintiff continued to request to speak to a crisis care counselor and his requests were denied. (*Id.* at p. 68).

Plaintiff finally spoke to a crisis care mental health professional on February 7, 2022. (Doc. 1, p. 79). However, he continued to swallow objects while at Franklin County Jail. On February 11, 2022, he swallowed a toothpaste tube and on February 13, 2022, he swallowed a cup that contained his medicine. After this last incident, Plaintiff was life flighted to Deaconess Hospital and then released from custody. (*Id.*).

### PRELIMINARY DISMISSALS

Throughout the Complaint, Plaintiff alleges that Defendants violated jail policy, state regulations, CDC recommendations, and the restraint chair's manufacturer's instructions and warnings. (*See* Doc. 1, p. 21-22, 54, 63, 68, 69, 72-74). Section 1983 "protects plaintiffs from constitutional violations, not violations of state laws or…departmental regulations and police practices." *Thompson v. City of Chi.*, 472 F. 3d 444, 455 (7th Cir. 2006); *Pulera v. Sarzant,* 966 F. 3d 540, 551 (7th Cir. 2020). Whether Defendants complied with local or state policy is "completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson,* 472 F. 3d at 455. For these reasons, to the extent Plaintiff is seeking liability based on noncompliance with local and state regulations and state law, such claims are dismissed with prejudice.

The Court further dismisses all claims against Kenneth Jacobs, Lenon Brodie, Brandon Wilson, and Steve Holland. These individuals are listed as defendants, but there are no allegations against them in the body of the Complaint. Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir. 1998); FED. R. CIV. P. 8(a)(2). Jacobs, Brodie, Wilson, and Holland will be dismissed from

this action without prejudice.

All claims are dismissed against Correctional Officer Gunter. Plaintiff claims that Gunter and eight other officers allowed him to use the phone on February 7, 2022. (Doc. 1, p. 81). He goes on to say that "jail staff" then refused to give him the correct ID pin so that he could place a call. Plaintiff does not describe the conduct on the part of Gunter that violated his constitutional rights. Accordingly, he has failed to state a claim against Gunter.

The Court also dismisses Plaintiff's First Amendment claim for being denied access to the grievance process. (*See* Doc. 1, p. 77). Inmates do not have a constitutional right to an effective grievance procedure. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). As such, the fact that jail officials denied, mishandled, or refused to consider grievances or claims raised by grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011). Additionally, the failure of prison officials to follow their own procedures also does not, standing alone, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992). Accordingly, Plaintiff's claim that his First Amendment right was violated because he was not freely able to file grievances at the Franklin County Jail is dismissed.

The claims against Advanced Correctional Healthcare and Franklin Hospital are dismissed. When suing a private entity pursuant to Section 1983 a plaintiff must plead that "the private entity acted under the color of state law," *Rodriguez v. Plymouth Ambulance Serv*., 577 F.3d 816, 822 (7th Cir. 2009), and that his constitutional rights were violated by "a corporate policy or widespread practice or custom," *Howell v. Wexford Health Sources, Inc*., 987 F. 3d 647, 653 (7th Feb. 5, 2021). Plaintiff has not pled any facts from which the Court can infer that a policy or practice on the part of these Defendants caused a constitutional deprivation, rather than the conduct of individual employees. *See Shields v. Ill. Dep't of Corr*., 746 F.3d 782, 789 (7th Cir. 2014), *cert.*

Page 9 of 26

*denied*, 135 S. Ct. 1024 (2015)). Advanced Correctional Healthcare and Franklin Hospital cannot be held liable for the constitutional torts of their employees and agents. *See Howell v. Wexford Health Sources, In*c., 987 F.3d 647, 653 (7th Cir. 2021). Accordingly, the claims against these two entities are dismissed.

Similar to suing a private entity, when suing a municipality, such as the City of Benton, a plaintiff must assert that a constitutional violation was "carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). "The 'official policy' requirement for liability under § 1983 is to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* (citations and internal quotation marks omitted). A plaintiff pursuing an official custom theory "must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee,* 850 F.3d 335, 344 (7th Cir. 2017).

Here, Plaintiff's allegations focus on the conduct of individual employees, and they are not sufficient for the Court to plausibly infer that his constitutional violations were the result of a widespread practice or policy implemented by the City of Benton. Plaintiff states that the employees of the City of Benton routinely fail to provide adequate medical and mental health care to inmates and disregard policies, training, and state law. (Doc. 1, p. 21, 26, 36). He asserts that pursuant to jail policy and state regulations certain mental health evaluations are required while in custody, there are policies and laws concerning special management inmates, and that the City of Benton employs a mental health liaison on site, Paul Tart. (*Id.* at p. 21-23, 27). The staff at the jail, however, did not follow these policies, did not hire a sufficient number of staff, and Paul Tart refused to speak with him. (Doc. 1, p. 22-23). Because Plaintiff is attempting to hold the City of Benton liable for the conduct of individual employees who failed to follow established policies

and practices, the claims against the City of Benton are dismissed without prejudice.

Likewise, the claim of failure to train, supervise, and discipline employees is dismissed. (Doc. 1, p. 24, 45). The facts alleged to support this claim are conclusory, and it is not clear from the pleading who this claim is asserted against. At one point, Plaintiff states that the claim is alleged against all Defendants, which is not plausible. (*Id.* at p. 45). Thus, Plaintiff has failed to state a claim for failure to train, supervise, and discipline employees.

Plaintiff includes allegations in the body of the Complaint against individuals who are not identified in the case caption as defendants. The Court will not treat parties not listed in the caption as defendants, and any claims against them are considered dismissed without prejudice. *See Myles v. United States,* 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

The Court dismisses all claims alleged against "staff." Throughout the Complaint, Plaintiff directs allegations towards "staff" or "jail administration" in general. (*See* Doc. 1, p. 59, 76, 81, 82, 84). This is not sufficient to state a claim. While Plaintiff may use "John Doe" or "Jane Doe" to refer to parties whose names are unknown, he must still follow Federal Rule of Civil Procedure 8 pleading standards and include a short, plain statement of the case against each individual defendant. Simply stating that a group of staff harmed him without providing more is not sufficient to state a claim under the federal pleading standards. *See* FED. R. CIV. P. 8; *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement).

Claims against outside medical providers Dr. Rios, Dr. Jandura-Cessna, and Dr. Linder are dismissed. A plaintiff cannot proceed with a federal claim under Section 1983 against a non-state actor. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Gayman v. Principal Fin.*

*Servs., Inc.*, 311 F.3d 851, 852-53 (7th Cir. 2003). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988) (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)). Whether or not any of the defendants, as private physicians, can be considered a "state actor" is a key factor in determining whether Plaintiff can maintain a constitutional claim against them. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822-30 (7th Cir. 2009). "An act is not attributable to a State unless it is traceable to the State's power or authority." *Lindke v. Freed,* 144 S. Ct. 756, 767 (2024). Here, Plaintiff has not alleged facts from which the Court can plausibly infer that the defendant doctors were acting under color of state law when treating Plaintiff. In fact, he admits that he does not know if these individuals are government employees, and based on the facts in the Complaint, they happened to be the doctors on duty when Plaintiff was brought to the private hospital. (Doc. 1, p. 9). Because he has not alleged that Dr. Rios, Dr. Jandura-Cessna, and Dr. Linder had any ties with state actors at all, his claims against them are dismissed without prejudice. *See DiDonato v. Panatera,* 24 F. 4th 1156, 1161 (7th Cir. 2022) ("To plead that a defendant acted under color of state law, a § 1983 plaintiff must allege that a defendant's invocation of state authority in one way or another facilitated or enabled the alleged misconduct.").

Finally, the Court dismisses several state law claims. Plaintiff states that he is bringing against all twenty-seven defendants state law claims for (1) negligence; (2) medical negligence; (3) collateral negligence; (4) contributory negligence; (5) ministerial neglect; (6) indemnification; (7) wanton, willful, gross, and reckless conduct; and (8) totality of conditions. (Doc. 1, p. 46). Other than listing out these state law claims, Plaintiff provides no further explanation. Conclusory statements, such as these, do not meet the pleading standards set for in *Twombly* and Federal Rule

of Civil Procedure. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements"). Accordingly, these state law claims are dismissed.

**DISCUSSION**

Based on the allegations of the Complaint and Plaintiff's articulation of his claims, the Court finds it convenient to designate the remaining claims as follows:

**Count 1:** Fourteenth Amendment claim against Defendants for failing to provide Plaintiff mental health treatment and protect him from self-harm.

**Count 2:** Fourteenth Amendment claim against Defendants for failing to provide Plaintiff constitutionally adequate medical care.

**Count 3:** Fourteenth Amendment claim against Defendants for the use of excessive force against Plaintiff by repeatedly placing him in a restraint chair.

**Count 4:** Fourteenth Amendment claim against Defendants Lampley and Gallagher for the use of excessive force on February 8, 2022.

**Count 5:** First Amendment claim against Defendants for retaliating against Plaintiff for filing grievances.

**Count 6:** Fourth/Fourteenth Amendment claim against Bartoni for having Plaintiff wear a smock that exposed his genitals while he was placed in the restraint chair.

**Count 7:** State law claim for aggravated battery against Gallagher and Lampley for using force against Plaintiff and spraying him with pepper spray on February 8, 2022.

**Count 8:** State law claim for intentional infliction of emotional distress.

The parties and the Court will use these designations in all future pleadings and orders, unless

**Complaint but not addressed in this Order should be considered dismissed without prejudice**

Page 13 of 26

as inadequately pled under the *Twombly*[1] pleading standard.

**Counts 1-5: Fourteenth Amendment**

As this Court has stated in Plaintiff's other civil case, *Braden v. City of Marrion Ill.,* No. 23-cv-00298-SPM (Doc. 26), Plaintiff's claims implicate the Fourteenth Amendment Due Process Clause, which protects pretrial detainees from all forms of punishment and not the Eighth Amendment. *See Kingsley v. Henderson*, 576 U.S. 389 (2015) (Fourteenth Amendment excessive force claim); *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018) (Fourteenth Amendment medical care claim).[2] Jail conditions violate the Fourteenth Amendment when they deprive a pretrial detainee of basic human needs, such as food, water, medical care, and safety. *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). To state a claim in this context, a pretrial detainee must plausibly allege that each defendant acted "purposefully, knowingly, or perhaps even recklessly" in relation to a risk—in this case, the risk of self-harm and denial of medical and mental health care—and that each defendant's conduct was also objectively unreasonable. *See Ferguson v. Cook Cnty. Corr'l Facility/Cermak*, 836 F. App'x 438, 441 (7th Cir. 2020) (citing *Miranda*, 900 F.3d at 353). "This requires the defendants'' actions [to] rise above negligence and resemble 'something akin to reckless disregard.'" *Ferguson v. Cook Cnty. Corr. Facility/Cermak,* 836 F. App'x 438, 441 (7 Cir. 2020) (quoting *Miranda,* 900 F. 3d at 353)). Likewise, to establish an excessive force claim under the Fourteenth Amendment, the plaintiff must show that "the force purposefully or knowingly used against him was objectively unreasonable." *Kingsley,* 576 U.S. at 396-97.

---

[1] *See Twombly,* 550 U.S. at 570.

[2] To the extent Plaintiff is attempting to bring claims pursuant to the Eighth Amendment, those claims are dismissed with prejudice. (Doc. 1, p. 49). The Court also notes that Plaintiff may have been an arrestee, not a detainee, at certain times of the events alleged in the Complaint. As an arrestee, his claims would be governed by the Fourth Amendment. The Seventh Circuit has held that the standards under both the Fourteenth and Fourth Amendments are "identical in all respects," and therefore, the Court sees no reason to further resolve whether Plaintiff was an arrestee or detainee at this time. *Pulera,* 966 F. 3d at 550.

Page 14 of 26

## Count 1

Plaintiff's allegations suggest that Defendants acted unreasonably in response to an obvious risk of self-harm and serious mental health needs. Plaintiff asserts that he did not receive any mental health evaluation, screening, treatment, or interventions until February 7, after being at Franklin County Jail for several weeks, even though he had a known history of self-harming behavior, he had made repeated attempts to harm himself, and he had requested to speak to a crisis counselor on several occasions. Defendants also responded to his risk of self-harm unreasonably by housing him in unsafe conditions where he had access to objects he could use to harm himself. (Doc. 1, p. 79). Count 1 will proceed against Mathew Pemberton, Nurse Stephanie, Anthony Skobel, Kyle Bacon, Kevin Roye, Dr. Beckemeyer, David Bartoni, Paul Tart, Jacob Bartoni, Gerald Dorris, Ann Lytle, Derek Mueller, Alex Galioto, and Paul Uraski. To the extent Plaintiff intended to bring his claim against any of the other Defendants, Count 1 is dismissed without prejudice.

## Count 2

Count 2 will be dismissed. Considering Plaintiff's allegations and all of the medical records he has attached to his Complaint, the Court cannot plausibly infer that any of the Defendants responded to his physical injuries unreasonably. *See Massey v. Merrill Lynch & Co., Inc.,* 464 F. 3d 642, 650 (7th Cir. 2006) ("a party may plead itself out of court by either including factual allegations that establish an impenetrable defense to its claims or by attaching exhibits that establish the same").

Plaintiff claims that on December 16, 2021, he was denied medical care after he reinjured his pinky finger. Plaintiff states that he was left with an open and untreated "compound fracture." He states he was not seen by medical staff until December 20, 2021. (Doc. 1, p. 52). According to his medical records and a grievance he wrote on December 19, however, he was seen the following

day on December 17 by a nurse. The nurse informed him he had a "superficial cut." (Doc. 1-2, p. 15, 21). Repeated calls were made to schedule Plaintiff with an orthopedic specialist, but Plaintiff could not be scheduled until December 23, 2021. (*See* Doc. 1-2, p. 15, 17, 21). The specialist diagnosed Plaintiff's injury as having distal and proximal phalanx fractures and noted that "neither are surgical," which contradicts Plaintiff's self-diagnoses of a compound fracture. (Doc. 1-2, p. 22). Rather than prescribe Norco, an opioid, to treat Plaintiff's pain, there is a medical note that Plaintiff should be provided 1000 milligrams of Tylenol twice a day. Although Plaintiff wrote grievances requesting pain medication and follow-up physical therapy for his finger injury, there is nothing in the Complaint alleging that any of the named Defendants received these grievances and were aware he was experiencing pain from his finger injury and needed further treatment. Nothing in these facts establishes that Defendants acted unreasonably. Accordingly, Count 2 is dismissed as to Anthony Skobel, Kyle Bacon, Kevin Roye, Nurse Stephanie, and Dr. Beckemeyer for denying Plaintiff medical care for his finger after he injured it on December 16, 2021.

The Court also dismisses Plaintiff's claim that Dr. Beckemeyer, Nurse Stephanie, Anthony Skobel, and Kyle Bacon denied him constitutionally adequate medical treatment after he ingested the e-cigarettes on January 2, 2022. (Doc. 1, p. 54-56). Based on the facts and exhibits, Plaintiff has failed to plead that Defendants acted unreasonably in response to the ingestion of the e-cigarettes. Rather, his pleading establishes that he merely disagreed with Dr. Beckemeyer's treatment plan to allow him to pass the objects on his own. (*See* Doc. 1-2, p. 29). Plaintiff wanted "emergency medical care," but once he was taken to the emergency room on January 12, he also disagreed with the treatment plan of the emergency room doctor, Dr. Rios. (Doc. 1, p. 54). Dr. Rios, and other surgeons Dr. Rios consulted, also believed that surgery was not necessary and recommended that Plaintiff take a laxative to assist him in passing the objects. (*Id.* at p. 40). Plaintiff refused and requested a "proper alternative recommendation," such as a colonoscopy

procedure. (Doc. 1, p. 55).

As a pretrial detainee, however, Plaintiff did not "have a constitutional right to dictate [his] medical care." *McClendon v. Lochard,* No. 19-cv-373, 2021 WL 317982, at *8 (N.D. Ill. July 27, 2021) (citing *Williams v. Ortiz,* 937 F. 3d 936, 944 (7th Cir. 2019)). Nor was Plaintiff "entitled to receive 'unqualified access to healthcare.'" *Id.* (citing *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015)). The fact that he disagreed with a Dr. Beckemeyer's "medical judgment is not enough to establish that a course of medical treatment was objectively unreasonable." *Id.*[3] The fact that the specialist, Dr. McCann, would have treated Plaintiff's injury differently and disagreed with Dr. Beckemeyer and Dr. Rios, also is not sufficient to establish that the "treatment at the jail was objectively unreasonable." *See McClendon,* 2021 WL 3172982, at *10 (citations omitted). Accordingly, Plaintiff has failed to state a claim against Dr. Beckemeyer and Nurse Stephanie for constitutionally inadequate medical care after he ingested e-cigarettes.

As non-medical staff, Anthony Skobel and Kyle Bacon will not be held liable for trusting and following the judgment of medical professionals. *See Miranda,* 900 F. 3d at 343. Plaintiff's claim of inadequate medical care after ingesting e-cigarettes is also dismissed as to Skobel and Bacon.

Plaintiff also has not stated a claim against Gerald Dorris for not obtaining medical care for Plaintiff after he ingested glass on January 24, 2022. (Doc. 1, p. 61-62). In the Complaint, Plaintiff refers to the incident report in his exhibits. (Doc. 1-2, p. 64). In the report, Dorris writes

---

[3] The Court notes that the determination to allow Plaintiff to pass ingested objects naturally was the approach taken later by doctors who treated Plaintiff after he swallowed the metal clip. The medical records record, "Dr. McCadams stated he would reserve surgery for complete obstruction, perforation or signs of colonic injury. Dr. Foley who performed the initial laparotomy felt that the risk of colotomy was greater than the risk of allowing the form body to pass through…Dr. Cunningham evaluated the patient and stated regarding the foreign body in his right colon, I would not change the plan as outlined by other physicians and would allow time for spontaneous migration." (Doc. 1-3, p. 35). *See also Lisle v. Eovaldi,* No. 16-cv-00422-NJR, 2020 WL 1287947, at *3 (S.D. Ill. Mar. 18, 2020) (the plaintiff did not refute doctor's testimony that when an inmate swallows a foreign body, the standard of care is to allow the object to "pass through the gastrointestinal system naturally as the associated risks are lower than those of surgery.").

that after discovering that Plaintiff swallowed glass, he (1) removed Plaintiff from his cell; (2) secured Plaintiff to the booking bench; and (3) asked another officer to call the doctor. At the direction of Kyle Bacon, Dorris retrieved the restraint chair, but then Dorris was informed that the doctor wanted Plaintiff taken to the hospital. While making calls to organize Plaintiff's transportation, Plaintiff ate a metal clip from the chair. (*Id.*). Plaintiff states that he ate the clip because he believed he was going to be placed in the restraint chair and not taken to the hospital. (Doc. 1, p. 61). As pled, nothing about Dorris's conduct was unreasonable. *See Szopinski v. Koontz,* 832 F. App'x 449, 452 (7th Cir. 2020) ("A defendant cannot be liable if they respond reasonably to a risk, even if the harm was not averted.") (citing *Orlowski v. Milwaukee Cnty*., 872 F.3d 417, 424 (7th Cir. 2017)). While it may have been negligent to leave Plaintiff unsupervised while he made calls to organize Plaintiff's transportation to the hospital, negligent conduct does not amount to a constitutional violation. *Szopinksi v. Koontz,* 832 F. App'x 449, 452 (7th Cir. 2020) ("A defendant cannot be liable if they respond reasonably to a risk, even if the harm was not averted.").

Finally, Count 2 is also dismissed against Correctional Officers Gallagher and Lampley. Plaintiff asserts that the officers escorted him to the gastroenterologist's office on January 14, 2022. (Doc. 1, p. 57-58). When Dr. McCann said that Plaintiff needed emergency surgery, Gallagher responded that Plaintiff needed to go back to the jail because his shift ended in thirty minutes. (*Id.* at p. 58). Dr. McCain called the jail and directed that Gallagher and Lampley take Plaintiff directly to the emergency room from his office, which they did. Although a phone call had to be made, the officers followed the directions of the doctor, and these allegations do not establish that their conduct amounted to a constitutional violation. Accordingly, Count 2 is dismissed as Gallagher and Lampley.

## Count 3

Plaintiff alleges that placement in the four-point restraint chair was unnecessary and

constituted the maximum means of restraint when lesser means of observation were available, such as placing him in a suicide watch cell without access to foreign objects that he could consume, permitting him to stay in the hospital, or providing him a mental health evaluation for in-patient hospitalization. (Doc. 1, p. 53, 68). He also asserts that he was placed in the chair as punishment. These allegations are conclusory, and not supported by any facts alleged in the Complaint or exhibits. For the following reasons, Count 3 will be dismissed.

According to Plaintiff's allegations, he continued to self-harm while at Franklin County Jail not only by ingesting objects, but also through other means. Prior to his arrival at Franklin County Jail, he attempted to amputate his finger and after arriving at the jail he intentionally injured his finger twice, removed his stitches and the splint from his finger after receiving treatment, and removed the staples from his incision following one of his medical procedures. Since his arrival at Franklin County Jail, Plaintiff repeatedly expressed his intention to self-harm so that he would be released from custody. He believed that if he injured himself, then he would be taken to an outside facility for medical care and be released on a recognizance bond. (Doc. 1-2, p. 13). He discusses in his Complaint how another inmate was released from custody after swallowing glass so the jail did not incur a large hospital bill. (Doc. 1, p. 61). Plaintiff explains that the goal of his self-harm was to force staff to admit him to a hospital for medical and mental health treatment. (*Id.* at p. 60-61, 67). Plaintiff states that he told Captain Bacon that he did not care what it takes, he would kill himself if he was not taken back to the hospital. (*Id.* at p. 56). Thus, based on Plaintiff's own assertions, placing him in less restrictive means, such as in a cell free of objects he could ingest, would not have prevented Plaintiff from finding a way to continue to harm himself, as he was determined to be released on a type of medical recognizance no matter what.

Based on the facts alleged and the exhibits, the use of the four-point restraint was used to prevent self-abusive behavior and protect Plaintiff from himself, and the Court cannot plausibly

infer that the use of the restraint chair was constitutionally impermissible. *See Jennings v. Fuller,* 659 F. App'x 867, 871 (6th Cir. 2016) ("pepper spray, Tasers, arm bars, restraint devices, spit hoods, etc. all have their legitimate place"). Defendants were left "with the almost impossible task of trying to protect a man from himself twenty-four hours a day and seven days a week." *Bowers v. Pollard,* 602 F. Supp. 2d 977, 992-93 (Mar. 17, 2009), *aff'd* 345 F. App'x 191 (7th Cir. Sept. 17, 2009) (finding that the use of a five-point restraint was a "reasonable response to [the plaintiff's] self-abusing behavior" under the Eighth Amendment). To rule otherwise, would empower "inmates to use the threat of self-harm to manipulate corrections staff." *Phillips v. Diedrick,* No. 18-C-56, 2019 WL 318403, at *3 (E.D. Wisc. Jan. 24, 2019).

The Court notes that the placement of Plaintiff in the four-point restraint chair over the weekend, from February 4-7, was a lengthy time, but again, the Complaint and exhibits document that Defendants placed Plaintiff in the chair for his safety and to prevent him from removing his staples (Doc. 1-3, p. 41-45), which he ultimately did only a day after being released from the chair. (Doc. 1-3, p. 46; Doc. 1-4, p. 10). Plaintiff asserts that David Bartoni informed that he was being placed in the chair "for [his] own safety," and that Plaintiff would stay in the chair until Bartoni said he could be released. (Doc. 1, p. 72). While in the restraint chair, Plaintiff was let out approximately every two hours and allowed to shower on February 6 and 7. (See Doc. 1-3, p. 57-96). Plaintiff asserts that Nurse Stephanie expressed concerns about Plaintiff remaining in the four-point restraint chair for an extended period time on February 7, and she provided the lieutenant a "restraint checklist." (Doc. 1-3, p. 98). She recommended that he remain in his smock but be able to move about freely in a cell. (*Id.*). It was explained to Nurse Stephanie that Plaintiff was to remain in the restraint chair for security reasons and to prevent self-harm. (Doc. 1-3, p. 98). However, Plaintiff was released from the restraint chair later that day. (Doc. 1, p. 74).

Given the extreme circumstances, Plaintiff has failed to plead that his placement in the

four-point restraint chair on December 16, January 2, January 19, and January 20 immediately following intentional attempts of self-harm and from February 4-7 to prevent further self-harm and Plaintiff removing his stiches was objectively unreasonable and amounted to excessive force, and Count 3 is dismissed.

The Court also dismisses claims relating to placement in the restraint chair on January 19, 2022, and January 20, 2022. (Doc. 1, p. 59, 60). Plaintiff does not plead any factual allegations to support an inference of personal involvement on the part of the named defendants. He simply writes a number in the margin that corresponds to a defendant but does not describe any alleged conduct. Thus, Count 3 is dismissed to the extent that Plaintiff is asserting that placement in the four-point restraint chair amounted to excessive force on January 19 and 20.

## Count 4

Plaintiff claims that on February 8, 2022, he was cut short from using the phone by staff. (Doc. 1, p. 82-83). Plaintiff became upset and began arguing with staff. Correctional Officers Lampley and Gallagher and others grabbed Plaintiff by his shoulders and threw him onto the floor of holding cell 5. The excessive force used caused Plaintiff's staples to rip, and his stomach was re-opened about a centimeter in length. Lampley then sprayed Plaintiff with pepper spray.

Count 4 will proceed against Lampley and Gallagher for the use of excessive force.

## Count 5

Plaintiff asserts that he was threatened with violence by Anthony Skobel and Mathew Pemberton if he continued to file grievances. (Doc. 1, p. 76-77). On February 8, 2022, after his phone call was cut short and he was thrown into his cell, Gallagher and Lampley told Plaintiff that "next time make your phone calls not your grievances," and Lampley sprayed him with pepper spray. (*Id.* at p. 83). These allegations are sufficient for Count 5 to proceed against Skobel, Pemberton, Gallagher, and Lampley. *See Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011).

Count 5 is dismissed without prejudice as to all other defendants.

### Count 6

Plaintiff alleges that David Bartoni instructed staff to place Plaintiff in a smock that did not cover his genitals when he was placed in the four-point restraint chair. (Doc. 1, p. 42, 78). This is sufficient to state a claim against Bartoni under both the Fourth and the Fourteenth Amendments, and Count 6 survives preliminary review. *See Redman v. Downs,* 854 F. App'x 736, 738 (7th Cir. 2021); *Alicea v. Cnty. of Cook,* 88 F. 4th 1209 (7th Cir. 2023) (discussing the invasion of privacy and the use of cameras in courthouse holding cells and finding the cameras "reasonable under the circumstances").

### State Law Claims: Counts 7-8

Plaintiff seeks to bring state law claims against Defendants. When a district court has original jurisdiction over a civil action, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). As Plaintiff's allegations of battery and intentional infliction of emotional distress all derive from the same facts as his Fourteenth Amendment claims, the Court will exercise supplemental jurisdiction over the state law claims.

Count 7 will proceed against Gallagher and Lampley for battery under Illinois state law.

Count 8 will be dismissed. Plaintiff alleges that because he was placed in a suicide smock that allowed staff of both sexes to view his genitals, this caused him "humiliation, intentional, reckless, willful, wanton infliction of emotional distress (state claim)." (Doc. 1, p. 42, 78). These allegations do not plead the elements required for a state law claim of intentional infliction of emotional distress. *See McGreal v. Vill. Orland Park*, 850 F.3d 308, 315 (7th Cir. 2017). Having Plaintiff wear a suicide smock is not truly extreme and outrageous, and there is nothing from which

the Court can infer the Bartoni was aware and intended to cause severe emotional distress to Plaintiff by having him wear the smock. Accordingly, Plaintiff has failed to state a claim against Bartoni for intentional infliction of emotional distress.

### MOTION TO AMEND AND SUPPLEMENT COMPLAINT

Plaintiff has filed a motion seeking to amend his Complaint to specify that he is suing that all Defendants in both their official and individual capacities. (Doc. 11). The motion is **DENIED.** Plaintiff is only seeking monetary damages, and he cannot sue the remaining Defendants in their official capacity for monetary damages. *See MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 291 (7th Cir. 1993).

### REQUEST TO COMPEL PROSECUTION

Plaintiff requests for the Court to compel prosecution of any criminal acts. (Doc. 1, p. 85). The request is **DENIED.** Plaintiff has no right to compel a criminal prosecution. *See Wimberly v. Julius,* 606 F. App'x 309, 311 (7th Cir. 2015).

### MOTIONS FOR STATUS HEARING

The motion for status hearing is denied in light of this Order. (Doc. 14).

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is **DENIED.**[4] First, Plaintiff has not provided sufficient information for the Court to determine if he has made a reasonable effort to obtain counsel on his own. He states that he has written to over ten law firms and several legal aid agencies and that he has provided supporting declination letters. Plaintiff, however, has not provided the Court with any details regarding these firms or agencies, such as names and addresses. Furthermore, the Court cannot locate the declination letters Plaintiff claims

---

[4] In evaluating Plaintiff's Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

to have filed with the Court. They are not attached to his motion for recruitment of counsel, and the Court did not locate them in the over 200 pages of exhibits included with his Complaint for the declination letters.

Next, the Court finds that Plaintiff is capable of representing himself at this early stage in the litigation. With respect to his ability to pursue this action pro se, Plaintiff indicates that he is not familiar with the law. Nonetheless, the Court finds that Plaintiff is capable of proceeding pro se, at least for now. Plaintiff's limited knowledge of the law is not unique to him as a pro se litigant and does not necessarily warrant recruitment of counsel. He has some college education, and his pleadings demonstrate an ability to construct coherent sentences and relay information to the Court. Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to include in the motion the names and address of at least three attorneys he has contacted, and if available, attach the letters from the attorneys who declined representation.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. All claims against Kenneth Jacobs, Lenon Brodie, Brandon Wilson, Steve Holland, Gavin Gunter, Advanced Correctional Healthcare, Franklin Hospital, City of Benton, Rios, Jandura-Cessna, and Linder are **DISMISSED without prejudice**. Because there are no surviving claims against these Defendants, the Clerk of Court is **DIRECTED** to terminate them as parties on the docket.

**COUNT 1** shall proceed against Mathew Pemberton, Nurse Stephanie, Anthony Skobel, Kyle Bacon, Kevin Roye, Dr. Beckemeyer, David Bartoni, Paul Tart, Jacob Bartoni, Gerald Dorris, Ann Lytle, Derek Muller, Alex Galioto, and Paul Uraski. **COUNT 1** is **DISMISSED without prejudice** as to any other defendant.

**COUNTS 2** and **3** are **DISMISSED without prejudice.**

Page 24 of 26

**COUNT 4** shall proceed against Lampley and Gallagher.

**COUNT 5** shall proceed against Anthony Skobel, Mathew Pemberton, Gallagher, and Lampley. **COUNT 5** is **DISMISSED without prejudice** as to any other defendant.

**COUNT 6** shall proceed against David Bartoni.

**COUNT 7** shall proceed against Gallagher and Lampley.

**COUNT 8** is **DISMISSED without prejudice.**

Because Plaintiff's claims involve his medical care, the Clerk is further **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for David Bartoni, Skobel, Bacon, Roye, Pemberton, Jacob Bartoni, Gallagher, Lampley, Tart, Dorris, Stephanie, Beckemeyer, Lytle, Mueller, Galioto, and Uraski the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the

Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   April 26, 2024**

_____*s/Stephen P. McGlynn*_____
**STEPHEN P. MCGLYNN**
**United States District Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.