In The United States District Court
For The Southern District Of Illinois

Travis Wade Braden, (Pro-Se),  )
              Plaintiff        )
                               )
  V.                           )
                               )
                               ) Case No. 23-CV-3588-SPM
Stephanie Harsey,              )
                               )
Shawn Beckemeyer, (et. al.)    )
              Defendants       )

## Plaintiff's Response To Defendants' Motion For Summary Judgement

Now Comes the Plaintiff, Travis Wade Braden, Pro-Se, in response to Defendants' Stephanie Harsey and Shawn Beckemey's Summary Judgement Motion Stating in opposition the following:

Pg. 1

# I. Introduction

This case is brought by the Plaintiff, Travis Wade Braden, Pro Se, pursuant to 42 U.S.C. § 1983, in response to the Defendant's Stephanie Harsey and Shawn Beckemeyer violating the Plaintiff's Constitutional Rights during a specific custody date between December 2, 2021 and February 13, 2022 while the Plaintiff was housed at the Franklin County Jail (FCJ).

The Defendant's have filed a Motion for Summary Judgement alleging the Plaintiff failed to fully exhaust his administrative remedies pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997(e).

The Plaintiff Contends that throughout his custody his administrative remedies was in fact made unavailable to him, and his release on February 13, 2022 made any further available grievance and administrative remedies unavailable.

Therefore, the Defendant's are not entitled to any judgement as matter of law and their Motion for Summary Judgement should be Denied.

pg. 2

## II. Response To Undisputed Material Facts:

### A. Undisputed Material Facts:

Each of the following listed statements numbered from Defendants' Summary Judgement Motion Section III. are conceded by the Plaintiff to be Undisputed and material:

Paragraph:# 2. Admit;
# 3. Admit;
# 4. Admit;
# 5. Admit;
#6. Admit;
# 8. Admit.

B. _Disputed Material Facts_.

Each of the following listed statements numbered from the Defendants' Summary Judgement motion Section III., The Plaintiff concedes to be material, but is claimed to be disputed:

Paragraph #1. Disputed.
_Plaintiffs Response_: Plaintiffs Declaration submits he was "in custody of the Franklin County Jail from approximately December 2, 2021 until release from custody on February 13, 2022." See (Declaration Page #2, Paragraph #2) (Jail Logbook Exhibit B.)

Paragraph #7. Disputed.
_Plaintiffs Response_: The Plaintiffs Declaration submits he was placed into "Medical Observation" on December 6, 2021 and under this policy detainee's may not submit a grievance form at any time. See Declaration (page 3 paragraphs 6 and 7.)

pg. 4

Paragraph # 9. Disputed.

Plaintiffs' Response: Within plaintiffs' Medical request # 38/9317 The Plaintiff informed the Nurse, "I have tried filing medical grievances 3 times and it is not submitting them." Within Plaintiffs' Declaration he submitted Specific issues the Kiosk Programs was having, as well as staffs' awareness of, and failure to fix, the I.T. issues. When staff would assist and provide the Kiosk to Plaintiff the programs were malfunctioning making the grievance process unavailable. See (Medical DEF 0162,) and (Declaration Page 6, paragraph 15, Page 7 paragraph 18, 19, Page 8, paragraph 20, 21, and 22. Page 11 paragraph 28., Page 12 paragraph 32.)

9. On or about 1/1/2022 the Plaintiff made several verbal complaints to staff about his right to file grievances, and his needs for mental health treatment, and better conditions of confinement. ~~Defendant Anthony~~ Skobel commented to Plaintiff that Plaintiff is "Lucky he is being permitted to purchase commissary on Suicide watch and gets to smoke E-Ciggerettes, that if he wants to file grievances, and cry and whine about his fingers, that he can go to F-Block indefinitely for his Stay and not get anything except a few Ass Beatings each time he opens his mouth." This comment Was taken as a serious threat. F-Block is an enclosed cell in the center of the Holding Cells that has no windows, no camera's, and used by Staff Seeking to punish inmates "off Camera's" physically. This threat discouraged Plaintiff from seeking to file grievances.

<u>Paragraph #10.</u>  Disputed.

<u>Plaintiff's Response</u>: The Plaintiff's grievance records relevant to his exhaustion period (his custody date) show only 2 grievance's throughout his custody that successfully submitted. These two grievance's can be identified in:

Medical (DEF 0195);

Medical (DEF 0196).

The remaining documents the Defendant's assert are grievances are not grievance's, they are Medical Requests. The remaining 6 documents the Defendants are attempting to identify as grievance's are Medical Requests. These can be identified in:

Medical (DEF 0161 – 0166.)

Furthermore Plaintiff should note that his exhaustion period relevant to his claims ended with his release date from custody. So all medical requests and grievance's Defendants provided in Exhibit 1. are not relevant to the issue of this exhaustion period. See (Brief Page 13, Dixon V. Page, 291 F.3d 485, 488 (7ᵗʰ Cir 2002). (Jail Logbook Exhibit B.)

pg. 6

7. On 12/13/2021, the Plaintiff was seen by the Nurse Stephanie Harsy for an Illinois Statute required Medical and Mental Health Examination. The Plaintiff was still on Suicide Watch Status from Self-Harm and Defendant Stephanie Harsy failed to provide the required Suicide Screening tool assessment for adequate mental health evaluation and referral.

8. On 12/16/2021, the Plaintiff was released from Suicide Watch into General Population by Defendant Anthony Skobel without ever seeing Crisis care, Mental Health, and without being provided any proper protocol Suicide-Self-Harm mental Health Evaluations or risk assessment tools, and within hours the Plaintiff Conducted Self-Harm fracturing his finger again, and went back on Suicide Watch for the remainder of his custody at the Jail.

Paragraph #11. Disputed.

Plaintiff's Response: The only two successfully submitted grievances filed within the relevant exhaustion period received no formal or informal responses outside of the verbal threats and physical excessive force responses. See (Medical DEF 0195, 0196.) and Plaintiffs (Declaration page 5 paragraph #11, Page 8 paragraph #22, Page 10 paragraph #27, Page 11 paragraph #30, Page 12 paragraph #32.

Paragraph #12. Disputed.

Plaintiff's Response: The Franklin County Jail Resident Handbook fails to explicitly instruct or require any dates or times within it. See (Medical DEF 0219)

5. On 12/6/2021 The Plaintiff was placed into Medical Observation Suicide Watch, and designated as a Special Management Inmate, in accordance with Franklin County Jail Policy and Procedure titled: Special Management Inmates Page: 1.038 after Hospitalization from a Self-Harm incident. This Policy provides the Franklin County Jail will maintain practices to ensure the safe, secure, and controlled housing of Special Management Inmates. Some of the procedures include restrictions on access to anything inmates can use to Self-Harm. Access to writing materials, phones, and the Kiosk are restricted often times during Suicide Watch Status.

6. On 12/10/2021 The Plaintiff convinced an officer to permit him access to the Kiosk for a medical request.

<u>Paragraph #13.</u> Disputed.

<u>Plaintiff's Response:</u> Plaintiff submits in his Declaration his attempts to seek mental Healthcare in several face to face discussions with both Jail personnel, Jail Administration, and Medical including conversations with both Defendants Stephanie Harsey and Shawn Beckemeyer. In addition, Plaintiff's efforts at resolving these issues with staff went blatantly ignored. See (Plaintiff's Declaration. Page 3 paragraph #5, Page 4 paragraph #8, #9, and #10. Page 5 paragraph #13, Page 6 paragraph #16. Page 7 paragraph #17. Page 8 paragraph #20. Page 9 paragraph #23. Page 11 paragraph #29 and #30.) and (Medical DEF 0162) See (Exhibit C. Page 1 and 2), (~~EXHIBIT D DEF NUMBER 2~~) T.B.

<u>Paragraph #14.</u> Disputed.

<u>Plaintiff's Response:</u> Same Response as (Paragraph #13 above) with additional response that Plaintiff's exhaustion remedies became unavailable throughout his custody as stated within his Declaration. And there was no initial response except to blatantly disregard and ignore Plaintiff's request and interfere with Plaintiff's remedy process. See (Declaration) and (Medical DEF 0162).

pg. 8

5.) Within the custody dates of the Plaintiff's Claims in this complaint between 12/2/21 and 2/13/2022 The Plaintiff attempted to file medical grievances and the Kiosk was not submitting them correctly. In medical request filed on 1/1/2022 #3819317 The Plaintiff stated to the Nurse about the 3 attempts of filing medical grievances and the Kiosk not submitting them. This issue was never resolved and within those grievances the Plaintiff submitted issues about the Nurse and DR Bechemeyer's failure to address and provide a mental Health Evaluation and Risk Assesment Tool during the Physical Evaluation exam taken on 12/ /2021 while Plaintiff was on Suicide Watch and the Plaintiffs requests for Psych medications and Psychiatric Evaluation and Treatment.

Paragraph #15. Disputed.

Plaintiffs' Response: The Franklin County Jail Resident Handbook
fails to explicity instruct or require any identification of Staff
within it.

See (Medical DEF0219)

c. Only after serious constitutional rights violations regarding the improper prolonged use of restraints without any medical oversight and Plaintiffs' refusal(s) to be further co-operative beyond 68 hours of illegal restraints did two officers intervene allowing Plaintiff to submit a grievance on Sheriff David Bartoni for his illegal restraints on 2/8/2024.

d. Upon reviewing this grievance #3978165 The Plaintiff was refused any further access to file additional grievances and was retaliated on by Staff using excessive force. The Court identified in Count

e. Again, the Plaintiff was placed into Observation and was refused access to file grievances again through release on 2/13/2022.

f. Any and all grievances or medical grievance requests that fail to specifically identify Defendants Nurse Stephanie Harsey or Shawn Beckemeyer by name are due to the intentional withholding by these defendants and staff to allow proper identifications be made by Detainees in custody. The Plaintiff identified them to the best of his knowledge by The Jail Nurse and Jail DR. They was only 1 of each.

## C. Disputed Immaterial Facts:

The Plaintiff disputes the relevancy of specific exhibits found within Defendants' Exhibit 1. The plaintiff feels the Defendants intentionally introduced non-relevant materials in attempts to manufacture litigation tactics and discussion points in their Summary Judgement argument. These exhibits have no fundamental relevance to the Plaintiff's exhaustion period between 12/2/2021 and 2/13/2022. These documents are mostly from a subsequent custody period the following year outside the scope of the exhaustion period within this case. In addition they are not only immaterial but present prejudicial non-relevant materials such as Plaintiff's rap sheets and Plaintiff's Booking Pictures and Tattoo Pictures. These documents have no relevance to the issue of Plaintiff's exhaustion and Plaintiff seeks the court to Strike the immaterial documents in his attached Motion to Strike.

Immaterial Documents: Medical DEF:
0001 — 0047/0057 - 0081/0088 - 0119/0124 - 0126
0136 - 0160 / 0167/0168 - 0187/ 0189 - 0194

pg.10

D. _Additional Material facts_.

1. Plaintiffs' Declaration (Attatched)

2. Plaintiffs' Brief In Opposition To Defendants Summary Judgement Motion.

3. Exhibit A. and B. Jail Logbook

4. Exhibit C. Page 1 and 2 Physical Exam showing no review of intake evaluation on top Page 1, and no Mental Health Evaluation on Page 2 signed by both Defendants.

E. Conclusion.

The Defendants' have failed to present undisputed materials fact the Plaintiffs' remedies was fully available for exhaustion. Therefore the Defendants' are not entitled to judgement as matter of law.

Wherefore, the Plaintiff respectfully request this Honorable Court to enter an order denying the Defendants' Stephanie Harsey and Shawn Beckemeyer Summary Judgement and scheduling an Order for Discovery and Jury Trial in this matter.

Date: 11/13/2024
Signed: Travis Wade Braden
        Travis Wade Braden
        Reg. No. B84749
        Joliet Treatment Center
        2848 W. McDonough St.
        Joliet, IL. 60436

pg. 12

In The United States District Court
For The Southern District Of Illinois


Travis Wade Braden, (Pro-Se)  )
            Plaintiff          )
V.                             )
                               ) Case No. 23-CV-3588-SPM
Stephanie Harsey,              )
Shawn Beckemeyer, (et.al)      )
            Defendants         )


## Declaration In Opposition To Defendants' Summary Judgement Motion

Now Comes the Plaintiff, Travis Wade Braden, Pro-Se, in response to Defendants' Shawn Beckemeyer and Stephanie Harsey Summary Judgement Motion disputing the contentions by the Plaintiff and stating the following:

## Declaration:

1. I am the Plaintiff in the above-entitled case. I make this declaration in opposition to Defendants' Summary judgement motion.

2. My claims against the Defendants concern their failure to adequately provide Mental Healthcare to me while I was in custody of The Franklin County Jail from approximately December 2, 2021 until release from custody on February 13, 2022.

3. The Defendants' have asserted an affirmative defense alleging that I failed to exhaust my administrative remedies relevant to the claims in my complaint.

4. The Defendants are not entitled to Summary Judgement because there are genuine issues of Materials fact to be resolved. The facts are set out in this declaration.

pg. 2

5. On December 5th and 6th 2021, while housed in general population I made several requests to Jail personnel pressing the intercom on Dec. 5th and in a face to face discussion with C/o Matthew Pemberton on Dec. 6th about feeling depressed and suicidal to no avail. C/o Pemberton responded to me "you will run out of fingers before you see a crisis counselor here".

6. On December 6th, 2021. after Jail personnel refusing to provide me with any Mental Health Interventions, or crisis-care, I attempted to sever my finger off engaging in Self-Harm and upon return from the hospital I was placed on Medical Observation in accordance with the facility's Medical policy's regarding Suicide prevention and the administrations policy's regarding Special Management Inmates.

7. While housed under these policies, all materials was removed from my cell. I remained in a suicide smok, naked, without any mattress, bedding, clothes, books, writing materials or access to the phone or kiosk without Staff command approval.

pg. 3

8. During a follow up visit with the Nurse, Def. Stephanie Harsey, I requested to her face to face for a mental health evaluation. She responded to me "This jail does not have crisis-care on-site at this facility."

9. After the nurse denied my request for a mental health eval. I asked ℅ John Wheatley to please find out how I get a mental health evaluation done. He responded "That's Medical's Job."

10. On December 13, 2021. I was again seen by the nurse Defendant Stephanie Harsey for a mandatory physical. She asked me a few questions about my physical health and history but failed to ask any questions and evaluate any of my mental health. I thought this was odd because I was sitting in her office in a Suicide Smok outfit and being housed under Medical Observation for Self-Harm Behavior. When I asked her again a second time about getting me a mental health evaluation. She responded, "I told you thats all done by off-site contractors not by me."

pg.4

11. On December 16, 2021, the Jail Administrator Anthony Skobel, approached my cell and asked me, "Do you want to go to E-Block? I need your cell for another inmate." I responded "yes". He then stated, "This is your one chance Braden, if you fuck this up I'm going to bury you in F-Block." and then, "I don't want to hear another fucking word about you from now on".

12. There was no medical or mental health assessment completed by any Medical or Jail personnel to release me from Suicide Observation watch.

13. Immediately upon entering E-Block I sought out a way to self-harm a second time. Upon return from the Restraint Chair I was again placed into segregation on Medical Observation. The following days I pleaded with Jail Personnel Captain Kyle Bacon, Jail Admin. Anthony Skobel, Lt. Kevin Roye, and the Jail Nurse Defendant Stephanie Harsey in face-to-face conversations for both medical care and mental healthcare and each request went ignored.

Pg 5

14. On 12/17/2021, Defendant Stephanie Harsey approached my cell and asked to see my pinky. I removed my splint and told her "I have no feeling in it." She responded, "yea, you should avoid Self- Injury."

15. On December 19, 2021, I requested for Staff to allow me to use the Kiosk. When staff provided the Kiosk I was told "good luck, there have been alot of complaints about the Kiosk program's glitching and logging people out." I asked if the Jail Administrator was aware of this, and was told "yes, it's an IT technical issue." After filing one medical request the program froze, then logged me out and would not allow me to submit further medical request or grievances.

16. On December 20, 2021, I was seen by both Defendants' Nurse Stephanie Harsey and DR. Shawn Beckemeyer in a follow up exam. I asked DR. Beckemeyer if he could prescribe me Psychiatric meds and he stated, "you have to have a mental health evaluation first."

pg. 6

17. During the exam on December 20, 2021, I specifically asked DR. Beckemeyer for a Mental Health Evaluation and he responded to me "if administration approves it we can call Centerstone in to do it."

18. On several occasions beyond the DR. visit, I was permitted to use the kiosk and the programs used to submit both medical requests and grievances would not submit the requests. I informed staff of this problem and was told "Skobel knows about it." I requested for writing materials so I could handwrite a grievance and was told "Skobel denied my request cause I'm on watch".

19. On December 29, 2021, I was provided opportunity to try and use the kiosk. I attempted to file 3 seperate grievances on medical and was logged out each time. The program allowed me to submit one medical request only. Then another later in the day.

pg-7

20. On January 1, 2022, I was again provided access to the Kiosk. The grievance program still would not submit the grievances. The Medical Request form program submitted one request in which I notified the Nurse of my 3 grievances on medical I wasn't able to submit.

21. On January 2, 2022, I engaged in more Self-Harm behaviors that resulted in more punitive and restrictive conditions of confinement. Medical refused to see me and I was not permitted to use the Kiosk until January 7th, 2022. The Kiosk only permitted me to file one Medical Request but no grievances.

22. On January 19, 2022, I was permitted opportunity to use the Kiosk. I successfully submitted one grievance on % Gallagher for his dangerous driving on my medical writs. After submitting this grievance, % Gallagher took the Kiosk from me stating "You fucked up" and he locked me up stating "You will learn soon enough."

pg. 8

18. From 12/2/2021 through 2/13/2022 there was "no responses" by Administration or Medical Staff to any of the 2 grievances or 6 medical issues.

19. In a subsequent custody date in 2023 Plaintiff filed more than 50 grievances and 30 medical requests of which only 3 grievances had any response and 1 medical had any response.

20. Failure of Administration to respond. (And Medical) Obstructs Plaintiffs ability to fully exhaust his Administrative Remedies.

23. After January 19, 2022, I requested every day to all Jail personnel to help me get in front of a Psych DR. I was ignored and refused access to use the Kiosk. So I engaged in more self-Harm and went to hospitals several times. No Jail Medical staff would talk to me. At one point I seen Nurse Stephanie Harsey going to her lunch break past my cell and I pleaded with her that "I needed help" and she just kept walking past without a response.

24. The response to my pleas for help to Jail personnel and to Medical staff only upset me further and exacerbated my mental illness and I engaged in more serious Self-Harm.

25. After returning from a Hospital from (aparotomy surgery I was placed into a Restraint Chair for 60 hours without any medical acknowledgement or approval or oversight care. Nurse Stephanie placed a phone call to Centerstone and within one hour, thirty minutes Centerstone came to evaluate me.

pg. 9

16. On 2/8/2022 at 10:49 AM the Plaintiff was finally permitted access to use the Kiosk and he filed grievance #3978165 and while attempting to submit another on Medical against the Defendants Stephanie Harsy and Shawn Beckemeyer, Staff refused to provide the Plaintiff with the names of these Defendants and upon reviewing the first grievance filed staff "took" the Kiosk from the Plaintiff without him being able to submit the second. This resulted in Plaintiff becoming verbally upset and C/O Gallagher and C/O Lampley using excessive force against the Plaintiff ripping his surgical staples out and macing him.

17. Plaintiff was not permitted access to file any further grievance and was released from custody 5 days later on 2/13/2022.

26. During Centerstone's evaluation, I asked the QMHP MSW
Alexandra Stromidlo, if this Jail had previously requested
for any crisis-care intervention or mental health evaluations
for me. I was informed, "No, this was our first call regarding
you." Upon completion of the evaluation it was recommended
that I be placed into in-patient hospitalization with referrals
to the Jail and the Court.


27. The following day I pleaded with Sgt. Megan Dinguid
to allow me to use the Kiosk and make phone calls. Upon
filing my first grievance # 3978165 I was logged out.
Sgt. Dinguid told me to try the phone and afterward I
could try the Kiosk again. I attempted to use the
phone and was cut short by % Gallagher and % Lampley
informing me I was "done". They grabbed me from the
bench by both arms and threw me into my cell ripping my
staples out of my stomach. Once I was in the rear of
my cell % Lampley maced me from the door and %
gallagher stated "Next time make your phone calls first not your
grievances."

pg. 10

15. On 2/7/2022 The Plaintiff spent 68 hours restrained in a restraint Chair without any medical notice or observation. Upon being notified Defendant Stephanie Harsey contacted Centerstone to conduct a mental health evaluation at 7:50 Am. At 9:33 AM Centerstone arrived at the Jail for a Mental Health Evaluation. It took a simple phone call to this Mental Health Agency to provide the Plaintiff with a Mental Health Exam within 2 hours. This was a necessary exam needed to be done after the first Self-Harm Hospitalization and was not done until after 8 Hospitalizations. Upon release from the chair Sgt. Megan Diug informed Plaintiff he could file a grievance however he was again denied access to the Kiosk and the Plaintiff became verbally argumentative with staff.

28.  I was not permitted to file grievances or access the
Kiosk beyond that date " 2/8/2022".

29. All Jail Administration and Medical staff at the facility
including Jail personnel was made aware by me throughout
my custody that I was requesting for mental healthcare
and obviously in serious need of Psychiatric care. I
personally requested face to face to both Defendants for
Psychiatric Care and was continuously misinformed by
both Administration, "Skobel," and the Defendants deflecting
authorizations to eachother to contact Centerstone.

30. On or about January 1, 2022, the Jail Administrator
Anthony Skobel made comments to me about my request
for mental health and grievances request, stating "You are
lucky that you get to smoke and purchase E-ciggerettes on
Suicide Watch, if you want to whine and cry about your
fingers, you can go to F-Block indefinitely and get your ass
beatings for opening your mouth".

pg. 11

12. On several occassions while the Plaintiff was on
Suicide watch he attempted to submit grievances
and the Kiosk would not submit them forcing
Plaintiff to give up his attempts.

13. On several occassions the Plaintiff addressed
grievance concerns with staff that went ignored
and Staff repeatedly informed the Plaintiff that
per Sheriffs memo, Plaintiff is not permitted to
access the Kiosk.

14. On 1/19/2022 Plaintiff convinced a gaurd to
allow him to look up a legal issue on the Kiosk
and Plaintiff instead submitted a grievance. While
attempting to submit another grievance, the gaurd
took the Kiosk stating "I Lied to him" that he
"will get in trouble now for letting me use the Kiosk".

31. On February 13, 2022, I was released from custody of the Franklin County Jail.

32. My efforts to exhaust my remedies within the Jail was made unavailable. I feared retaliations by staff after being threatened and even further after being assaulted by Staff in response to grievances. I wasn't permitted access to the Kiosk adequately and it was malfunctioning. The Jail Administrator was made aware of the Kiosk programs not working properly and done nothing to have it fixed or provide any alternative means of filing grievances.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: 11/13/2024

Signed: Travis Braden

Travis Braden, Plaintiff  Case No. 23-CV-3588-SPM
Reg. No. B84749                         S.D. Ill.
Joliet Treatment Center
2848 W. McDonough St.
Joliet, Il. 60436

pg. 17

10. Plaintiff continued to be held in isolated custody status and denied any mental health treatment throughout 8 Self-Harm incidents. As these incidents increased Defendants Stephanie Harsy and Shawn Beckemeyer failed to act, or respond, in any way to summon Mental Health, evaluate or assess the Plaintiff for Mental Health treatment, or Referalls, or adequately provide mental health throughout Plaintiffs Crisis Self-Harm Hospitalizations.

11. Plaintiff remained on Suicide Watch with a Memo on Plaintiffs Cell Door, signed by Sheriff David Bartoni, instructing all staff to "only permit finger foods on a paper-towell, and a snack to Plaintiff in his cell, that no books, writing materials, bedding, mattress, forks, spoons, or anything else, including access to Phone, Kiosk, or visitations is permitted." This memo was placed on Plaintiffs Door sometime after January 15, 2022, further obstructing Plaintiff from filing grievances on the Kiosk.

1026 cell check
*Exhibit A.*
1031 Braden-ok
*Jail Logbook (2-8-22)* pg. 2
1035 Braden to DT to use restroom
1041 Braden back to bench
1050 Transport back with Bock from Jacksonce.
1049 Braden-ok on bench with Kiosk
1055 Braden-ok on bench, cell check
*Was Moved*
1104 Braden-ok on bench
1110 Braden-ok- on bench
1116 Braden-ok- on bench
1120 Braden-ok on bench
1125 I/m Powell out for zoom call; Braden-ok
1130 Braden-ok on bench (Kiosk taken)
1131 lunch passed
1132 Braden-ok given phone (roll around) on bench
1135 I/m Powell back to unit from zoomcall.
1138 I/m McBride back to jail from interview up front
1141 I/m Braden back to Holding 5 - combative (phase used.)
1158 Lt. Roye back to help decontaminate Braden
*KIOSK → Taken*
1204 cell check (Holding 5 cleaned)
1225 Braden still in shower
1229 cellcheck
1230 Braden back to cell, eating lunch. Given second blanket by Lt. Skobel
*Finally given Blankets*
1245 Braden-ok still eating. Lt. Skobel in cell, given Tylenol
1250 H5 closed, Braden in cell; Lt. Roye back up front
1256 F&W here again
1305 cellcheck
1310 Braden-ok
1316 cell check, chirpers passed out, Braden-ok
1329 cell check, Braden-ok
1332 hair clippers collected
1334 Processed Bock, Robert Deon w/m FTA Warrant

JP#96   pg. 17

JP#99

2-13-22

Pg 40

| Time | Entry |
|------|-------|
| 1420 | Frankie 402 |
| 1431 | Cell Check |
| 1448 | Lock smith here |
| 1505 | Cell Check |
| 1532 | Cell Check |
| 1600 | Landon 402 |
| 1608 | Matt 402 |
| 1628 | Chow started & head count |
| 1700 | Braden recogged and flying to nicenesss of his own accord |
| 1704 | Released on Bircog, Braden, Travis Wade, DOB/8-8-86  JP#98 |
| 1711 | Ann. Sgt. Dorris 10-42 |
| 1738 | cell check, mop buckets, & trash collected |
| 1759 | med pass started up front |
| 1823 | Released Osborn, Kevin G. DOB: 4-18-87 weekender out  JP#97 |
| 1831 | cell check |
| 1840 | Released Dover, Daniel J. DOB: 10-18-80 weekender out  JP#96 |
| 1849 | med pass finished in back |
| 1901 | cell check |
| 2000 | Jacobs, Ward 10-41 |
| 2035 | cell check |
| 2126 | cell check |
| 2154 | Cell Check |
| 2233 | cell check |
| 2246 | Holding 4 out for processing & shower |
| 2254 | Processed Moore, Taylor R. WF 10-19-02 agg. battery, resisting or obstructing a peace officer  JP#97 |
| 2303 | Moore, Taylor back to cell |

Pg. 18

## Medical History and Health Appraisal

Date: _____ Time: _____ County: _____ State: _____

Patient Name: Braden Travis   ID: _____ Location: _____

DOB: 8.25.8? Age: 35 Sex: (M) F Race: W Height: 5'8" Weight: 164

Intake Screen Reviewed? ☐ Yes ☐ No

Comment:

### VITAL SIGNS & COGNITIVE STATUS

B/P: 140/82 Temp: 97.? Pulse: 97 Pulse Ox: 99% Resp: _____

Glucose (if applicable): _____ Allergies: none

Level of Consciousness: ☑ Alert ☐ Lethargic ☐ Unresponsive   Oriented to: ☑ Person ☑ Place ☑ Time

Speech: ☑ Normal ☐ Slow ☐ Pressured ☐ Rambling ☐ Aphasic ☐ Other: _____

Mood/Affect: ☑ Calm ☐ Elevated ☐ Euphoric ☐ Irritable ☐ Sad ☐ Withdrawn ☐ Anxious ☐ Angry ☐ Hostile ☐ Flat ☐ Fearful

Behavior: ☑ Cooperative ☐ Guarded ☐ Uncooperative ☐ Suspicious ☐ Obsessive ☐ Distracted
☐ Other: _____

Hallucinations: ☑ None ☐ Visual ☐ Auditory ☐ Grandiose ☐ Delusional ☐ Paranoid ☐ Tactile ☐ Other: _____
☐ Response to other internal stimuli: _____

### MEDICAL HISTORY

CONTINUATION OF MEDICAL CARE: Are you currently under the care of a practitioner for any reason? ☐ Yes ☑ No
If YES, explain:

REFER TO MEDICAL RECORD FOR CURRENT LIST OF MEDICATIONS

SURGICAL HISTORY: (List surgeries and years) (L) pinky amp.   LFA - compound fx

SUBSTANCE USE: Alcohol ☐ Yes ☑ No   Tobacco ☑ Yes ☐ No   Injectable drugs ☐ Yes ☑ No   Other drug use ☑ Yes ☐ No
Have you ever had seizures or other symptoms of withdrawal after stopping the use of alcohol/drugs? ☐ Yes ☐ No

| DRUG/ALCOHOL OF CHOICE: | FREQUENCY/AMOUNT: | LAST USE: | WITHDRAWAL HISTORY: |
|---|---|---|---|
| cocaine | rarely | 3 wks ago | |
| Meth | 2-3x/week | 8/2/21 | |

| DO YOU OR HAVE YOU EVER HAD? | | | COMMENTS/APPRAISAL (IF APPLICABLE): |
|---|---|---|---|
| Recent head injury? | ☐ Yes | ☑ No | If Yes, Neuro-check: |
| Persistent headaches? | ☐ Yes | ☑ No | |
| Vertigo/Dizziness/Fainting? | ☐ Yes | ☑ No | Other: |
| Stroke/TIA? | ☐ Yes | ☑ No | |
| Seizure disorder? | ☐ Yes | ☑ No | |
| Eye/Vision Problems? | ☑ Yes | ☐ No | |
| Ear/Nose/Throat problems? | ☐ Yes | ☑ No | |
| Problems breathing/Asthma? | ☐ Yes | ☑ No | If applicable – Peak Flow:          Pulse Ox: |
| Genitourinary problems? | ☐ Yes | ☑ No | |
| Diabetes? | ☐ Yes | ☑ No | Type I or II?          Blood Glucose: |
| Gastrointestinal issues? | ☐ Yes | ☑ No | |
| High/Low blood pressure? | ☑ Yes | ☐ No | |
| Heart problems? | ☐ Yes | ☑ No | |
| Recent broken bones or deformities? | ☑ Yes | ☐ No | (R) hand pinky |
| Arthritis/Joint mobility issues or deformities? | ☑ Yes | ☐ No | missing (L) hand pinky |
| Back/Neck problems? (L) LS bulge | ☑ Yes | ☐ No | disc |
| Skin problems, Rashes, Open wounds? | ☑ Yes | ☐ No | sutures (R) pinky |
| STDs (recent, past, or present)? | ☐ Yes | ☑ No | |
| Hepatitis positive | ☐ Yes | ☑ No | Type:          Current Treatment: |
| HIV positive | ☐ Yes | ☑ No | Current Treatment: |
| Bleeding/Other blood disorders | ☐ Yes | ☑ No | Diagnosis:          Current Treatment: |
| Body infestation (lice, crabs, scabies, etc.) | ☐ Yes | ☑ No | |
| Currently pregnant | ☐ Yes | ☑ No | Gravida/Para:     /          UPT Result:          LMP: |

** ALL CURRENT MEDICATIONS ARE LISTED ON THE MEDICATION VERIFICATION FORM. **
**ABNORMAL FINDINGS ARE DOCUMENTED IN THE MEDICAL RECORD AND THE PRACTITIONER IS NOTIFIED. **

Medical History and Health Appraisal

| Patient Name: | | ID #: |
|---|---|---|
| **DO YOU OR HAVE YOU EVER HAD? (CONT.)** | | **COMMENTS/APPRAISAL (IF APPLICABLE):** |
|  | ** Report positive responses in this section to Jail Administration ** | |

| | | |
|---|---|---|
| History of violence towards others? | ☐ Yes ☒ No | |
| History of being victimized? | ☐ Yes ☒ No | |
| History of being sexually assaulted? | ☐ Yes ☒ No | |
| History of sexually assaulting others? | ☐ Yes ☒ No | |
| Is this person obviously a higher risk for victimization or assault? ☐ Yes ☐ No | | |
| What gender does the patient identify as? ☒ Male ☐ Female ☐ Gender Neutral | | |
| **If self-identification differs from outward appearance, notify jail administration for housing decision.** | | |

## SUICIDE SCREENING

☐ **COMPLETE THE ASQ SUICIDE SCREENING TOOL – FOLLOW INSTRUCTIONS IN "NEXT STEPS" SECTION**
If screening is POSITIVE, follow site-specific suicide prevention policy and contact the practitioner (and mental health clinician if available).
Additional comments:

## DENTAL SCREENING

| | |
|---|---|
| General condition of the teeth: | Good |
| General condition of the gums: | Good |
| Is inflammation present? ☐ Yes ☒ No   If Yes, describe: | |
| Last dental exam? | (o mos apr) |

## TB SCREENING

PPD Done: ☐ Yes ☐ No    Date Completed:    (Refer to TB Screening Form for results)

## REFERRAL

| | | | |
|---|---|---|---|
| ☐ MENTAL HEALTH | Date: | Time: | Reason: |
| ☐ DENTIST | Date: | Time: | Reason: |
| ☐ MEDICAL | Date: | Time: | Reason: |
| ☐ WOUND CARE | Date: | Time: | Reason: |
| ☐ CHRONIC CLINIC | Date: | Time: | Reason: |
| ☐ OTHER | Date: | Time: | Comment: |

## ACKNOWLEDGMENT

My signature below indicates that I have answered all questions truthfully
and I have been informed about how to access medical services.

| | |
|---|---|
| Patient Signature: | Date: 12/13/21 |
| Nurse Signature: | Date: 12/13/21 |
| Practitioner Signature: | Date: |

** ALL CURRENT MEDICATIONS ARE LISTED ON THE MEDICATION VERIFICATION FORM. **
**ABNORMAL FINDINGS ARE DOCUMENTED IN THE MEDICAL RECORD AND THE PRACTITIONER IS NOTIFIED. **

In The United States District Court

For The Southern District Of Illinois

Travis Wade Braden (Pro-Se)       )
          Plaintiff            )

V.                                )

Shawn Beckemeyer,                 ) Case No. 23-CV-3588-SPM

Stephanie Harsey, (et. al.)       )
        Defendants'          )


## Plaintiffs' Brief In Opposition To Defendants' Summary Judgement Motion


## Statement Of The Case

    This complaint is a §1983 filed by the Plaintiff, Travis Wade Braden, (Pro-Se), in response to the Defendants' Shawn Beckemeyer and Stephanie Harsey failing to provide Plaintiff with adequate mental healthcare and providing unsafe conditions of confinement violating Plaintiffs Constitutional Rights while he was a pre-trial detainee at the Franklin County Jail (FCJ).

The Defendants' have filed a Motion for Summary Judgement asserting an affirmative defense the Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act (PLRA) 42 U.S.C. § 1997 e(a).

The Plaintiff responds contending that his failure to exhaust should not bar his claims because Defendants' and Jail personnel failed to comply, and prevented him from complying with the facility's grievance procedures.

## Statement Of The facts.

In response to the Defendants' Summary Judgement Motion the Plaintiff submits in his Declaration the following:

1. The Plaintiffs' custody date relevant to the exhaustion period began on Dec. 2, 2021 and ended upon his release from custody on Feb. 13, 2022. See (Declaration Page 2 paragraph #2)

pg. 2

2. The franklin County Jail failed to provide an effective way
of communication with staff by:

   a.) failing to provide Plaintiff with a functional grievance
System;

   b.) failing to provide Plaintiff with adequate opportunity
to address grievances formally, while on Medical Observation
Status or SMI Policy's;

   C.) failing to respond to any grievance or medical request
throughout custody to Plaintiff;

   d.) Interfering with Plaintiff's right to remedy issues by
making threatening statements and using punitive and
physical excessive force responses to Plaintiffs grievance
filings.

   See (Declaration).
      (Medical DEF 0162) (0195-0196)

pg. 3

4.) Within Defendants Stephanie Harsey and Shawn Beckemeyer Motion for Summary Judgement Paragraph III. Statement of Undisputed facts #10. Defendants claim Plaintiff filed 8 grievances concerning matters including a lack of appropriate medical treatment between Feb. 8 2022 and July 3, 2023:

a. Upon placement in Observation Status as a Special Management Inmate and with a Direct Order Memo by Sheriff David Bartoni effectively denying Plaintiffs ability to exhaust his administrative remedies the Plaintiff was only permitted to file a grievance two times from his initial custody date of 12/2/2021 through his release on 2/13/2022 with the assistance of C/O Marie Johnson.

b. Grievance #3892260 was filed on Jan. 19th 2022 upon return from a medical writ and after submitting this grievance Plaintiff was threatened by Lt. Anthony Skobel and C/O Gallagher about filing any grievances and was not permitted to access the Kiosk any further for grievance filings, only medical requests with Staff present.

<u>Arguement</u>

A. <u>Summary Judgement Standard.</u>

     Summary Judgement is to be granted only if the
record before the court shows "that there is no genuine
issue as to any material fact and that the movant is
entitled to a judgement as matter of law." Fed. R. Civ. P.
Rule 56(a).

     In determining a summary judgement motion,
the court views the facts in the light most favorable
to, and draws all reasonable inferences in favor of,
the nonmoving party. Apex Digital, Inc. V. Sears, Roebuck
and Co., 735 F.3d 962 (7th Cir. 2013)(citation omitted).

     Courts generally cannot resolve factual disputes
on a motion for Summary Judgement. See Tolan V.
Cotton, 572 U.S. 650, 656, 134 S. Ct. 1861, 188 L.
Ed. 2d 895 (2014)

     ("A judge's function at summary judgement is
not to weigh the evidence and determine the truth;"
"whether there is a genuine issue for trial")is the
function of summary judgement hearings,(internal

pg. 4

quotation marks and citation omitted).

However, when the motion for summary judgement pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. Pavey V. Conley, 544 F.3d 998, 1004 (7th Cir. 2008).

After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. Wilborn V. Ealey, 881 F.3d 998, 1004 (7th Cir. 2018).

The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. See E.g., Walker V. Harris, 2021 U.S. Dist. LEXIS 143542, 2021 WL 3287832 *1 (S.D. Ill 2021); Miller V. Wexford Health Source, Inc., 2017 U.S. Dist. LEXIS 34772, 2017 WL 951399 *2 (S.D. Ill. 2017).

pg.5

B. <u>Exhaustion Of Administrative Remedies (PLRA)</u>.

Defendants' assert that Plaintiff's claims should be summarily dismissed in that Plaintiff failed to exhaust all administrative remedies prior to instituting this action.

Plaintiff responds contending that his failure to exhaust should not bar his claims because the Defendants' failed to comply, and prevented him from complying with the facility's grievance procedures.

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all 'available' administrative remedies. 42 U.S.C. § 1997e(a); Pavey, 544 F.3d at 740.

"The exhaustion requirement is an affirmative defense, which the defendants' bear the burden of proving." Pavey V. Conley. 663 F.3d 899, 903, (7th Cir. 2011).

pg. 6

For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo V. M⁵ Caughtry, 286 F.3d 1022, 1025 (7ᵗʰCir. 2002).

Furthermore, where administrative remedies are unavailable, The Prison Litigation Reform Act (PLRA) exhaustion provision will not bar a potential Plaintiff from accessing the courts. Lyon V. Vande Krol, 305 F.3d, 806, 808, 809 (8ᵗʰCir. 2002).

Franklin County Jail facility Policy's
a. Grievance Procedures.

As an inmate or detainee at the Franklin County Jail the administrative policy regarding grievance procedures require a two-Step process. See (Medical DEF 0219).

Step 1. "You must try to resolve problems with staff
or inmates before filing a grievance form."
Step 2. "Residents are allowed to file a grievance when
subjected to a criminal act by another inmate, a prohibited
act by a staff member, abuse, harassment, violation of
civil rights, or denied privileges without just cause as
specified in this handbook while in custody of the Franklin
County Jail." See (Medical DEF 0219).
      The resident handbook fails to provide any
further instructions to inmates pertaining to the
administrations response process or any appeal process
to those responses. See (Foulk V. Charrier, 262 F.3d
687, 697-98)(8ᵗʰ Cir. 2001) citing (remedies were "unavailable"
where Plaintiff completed first step of grievance process,
and officials failed to respond.)
      The resident handbook fails to explicitly require that
any Step 1 or Step 2 grievance issues contain names
of the parties complained about. Instead the (PLRA)
exhaustion requirement is to notify the Jail of an

pg. 8

inmate's issue so that there is opportunity to resolve the
issue short of litigation. As for (FCJ) policy requirements
falling short explicit requirements regarding identification
by name, and even date, and time, instructions, all the
Plaintiff was required to show is enough information so
the issue can be identified with opportunity to be resolved
by the administration before filing this lawsuit. The
Franklin County Jail Policy is far too vague with no explicit
instructions further than what was provided in the Resident
Handbook. See (Medical DEF 0219), (DEF 0209).


b. <u>Medical Policy's:</u>
   The handbook also sets forth the parameters for
medical care at the Jail. See (Medical DEF 0213,
DEF 0223, DEF 0209).

(1.) <u>Health Care.</u>
   "Within 14 days of entry into Franklin County Jail, a member
of the medical staff will give you a free medical screening /
evaluation. Answering truthfully is vital for your health needs. pg. 9

Medical Care is available 24 hours a day for medical emergencies, and on a regularly scheduled basis for non-emergencies. You must fill out a sick call on the Kiosk to be seen for a Sick call. The nurse is here on a regularly scheduled basis and will see any resident who fills out the proper form on the kiosk. The requests for medical care are on the kiosk. Sick calls are conducted by a licensed medical professional. If you become ill, you should notify a correctional officer to receive prompt medical attention. Free medical services are: Admitting Health Screening, follow up and Emergency Mental Health Evaluations." See (Medical DEF 0213).

(2.) Medical Segregation:
"is a special housing for residents who:
- Require closer observation for Medical or Mental Health reasons." See (Medical DEF 0223).

(3.) Special Management Inmates Policy:
This is a policy stating "The Franklin County Jail will maintain practices to ensure the safe, secure, and controlled housing of Special Management Inmates." See (Medical DEF 0082).   pg. 10

Detainees designated as Special Management Inmates are inmates placed into Segregation or isolation from the general jail population for the following reasons:

a. protective custody; b. disciplinary action; c. Observation; and d. Homosexual.

Detainees who engage in Self-Harm behaviors are placed into isolation under Medical Segregation Policy's, and Special Management Inmate Policy and Procedure in accordance with Procedure A. Paragraph #3, that states "Jail personnel will ensure that items, which could be used for Self-Destructive purposes, are removed from the segregation cell of inmates who are mentally ill or intoxicated." See(Medical DEF 0082).

These policy's in effect, present conditions of confinement that require Jail personnel to assist detainees seeking to file both medical requests and grievances on the Kiosk. These policy's restrict the residents from accessing the kiosk whom are engaging in Self-Harm and who are mentally ill. See (e.g. Morris, 512 F.3d at 1020 (The right to access the

pg. 11

Courts extend to situations where the claimant "has been denied meaningful access by some impediment put up by the defendant.") See Also Mitchell V. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (remedy "unavailable" where prison officials refused to supply the necessary grievance forms).

The Plaintiff's entire custody from December 6, 2021 through his release on February 13, 2022 was spent in isolation under the (FCJ) Special Management Inmate Policy. The Plaintiff was engaging in Self-Harm behaviors while experiencing mentally ill symptoms that resulted in even more strict restrictions as his custody progressed. Eventually Jail personnel relied heavily on these rights restrictions rather than providing the Plaintiff with mental healthcare. Jail personnel made threats, and used excessive force, and punitive responses to the Plaintiff in response to Plaintiffs request for mental healthcare and pursuit of filing grievances for not receiving it. See Jordan V. VanWinkle, No. 3:04-CV-647, 2006 U.S. Dist. LEXIS 66795, 2006 WL 2578982,                    pg. 12

at *4 (D. Ind. Sep. 5, 2006)(A remedy becomes 'unavailable'
if prison employee's "use affirmative misconduct to prevent a
prisoner from exhausting"). (quoting Dole V. Chandler, 438
F.3d 804, 809 (7th cir. 2006).

In addition, Plaintiff's complaint survived preliminary
review and proceeded with claims involving Jail personnel
using excessive force, threats, and punitive responses in
retaliation of Plaintiff's requests for medical, mental health
care, and in direct response to filing grievances during his
exhaustion period of custody. See (Document 15 Page
ID# 414, Count 5).

Finally, Plaintiff's available remedies exhaustion period
officially ended with his release from custody on February 13,
2022. See Dixon V. Page, 291 F.3d 485, 488 (7th cir 2002)
holding that where an inmate has been released, the prison grievance
system is no longer available for exhaustion.

## Conclusion

For the foregoing reasons, The Defendant's motion for Summary
Judgement Should be denied.

pg.13

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Plaintiff's Brief in Opposition To Defendants' Summary Judgement Motion is true and correct.

Date: 11/14/2024

Signed: _____

Travis Braden, Plaintiff (Pro-Se)
Reg. No. B84749
Joliet Treatment Center
2848 W. McDonough St.
Joliet, IL. 60436

pg. 14

2.) The Plaintiff contends that upon an evidentiary hearing pursuant to Pavey v. Conley 663 F.3d 899, 904 (7th Cir. 2011) and in addition to the Plaintiffs attached exhibits with this response. the court will affirm that his administrative remedies was made unavailable to him.

3.) Within Defendants Motion for Summary Judgement paragraph III. Statement of Undisputed Material facts, #7, 8, and 9. Defendants claims are simply not factual. Detainees placed into Medical Observation in accordance with Franklin County Jail Facility policy and procedure titled: Special Management Inmates page: 1.038 procedure A. maintains several procedures in which detainees are denied specific rights in cases of Self-Harm and Self-destructive behaviors of inmates who are mentally ill.

a. Plaintiff was designated a Special Management Inmate and placed into Medical Observation the entirety of his custody until release during and after the claims within this complaint.



US POSTAGE PITNEY BOWES

$ 003.71°

ZIP 60436
02 7M
0000832869 NOV 20 2024

FIRST-CLASS

This Correspondence
is from an Individual in Custody
of the Illinois Department
of Corrections

Travis Wade Braden
Reg. No. B84749
Joliet Treatment Center
2848 W. McDonough St.
Joliet, IL. 60436

MAIL CLEARED US MARSHALS

United States District Court
750 Missouri Avenue
East St. Louis, IL.
62201



* Legal *
* Mail *



RECEIVED
NOV 26 2024
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE