**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

TRAVIS WADE BRADEN,

                **Plaintiff,**

v.

DAVID BARTONI, *et al.,*

              **Defendants.**

           **Case No. 23-cv-03588-SPM**

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

Plaintiff Travis Braden, an inmate at Joliet Treatment Center, initiated this action pursuant to 42 U.S.C. §1983 for constitutional and state law violations that occurred during his pretrial detention at Franklin County Jail. In the Complaint, Plaintiff claims that while he was in custody at Franklin County Jail, he did not receive needed mental health evaluations, screenings, treatments, or interventions until February 7, 2022, even though he had a known history of self-harming behavior, he had made repeated attempts to harm himself, and he had requested to speak to a crisis counselor on several occasions. Additionally, Plaintiff alleges that he was subjected to excessive force, and he was retaliated against for filing grievances. Plaintiff is currently proceeding with the following claims:

> **Count 1:** Fourteenth Amendment claim against Defendants Pemberton, Harsy, Skobel, Bacon, Roye, Beckemeyer, D. Bartoni, Tart, J. Bartoni, Dorris, Lytle, Mueller, Galioto, and Uraski for failing to provide Plaintiff mental health treatment and protect him from self-harm.

> **Count 4:** Fourteenth Amendment claim against Defendants Lampley and Gallagher for the use of excessive force on February 8, 2022.

Page 1 of 12

| | | |
|---|---|---|
| **Count 5:** | First Amendment claim against Defendants Skobel, Pemberton, Gallagher, and Lampley for retaliating against Plaintiff for filing grievances. | |
| **Count 6:** | Fourth/Fourteenth Amendment claim against Defendant D. Bartoni for having Plaintiff wear a smock that exposed his genitals while he was placed in the restraint chair. | |
| **Count 7:** | State law claim for aggravated battery against Defendants Gallagher and Lampley for using force against Plaintiff and spraying him with pepper spray on February 8, 2022. | |

(Doc. 15, p. 24-25).

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Dr. Shawn Beckemeyer and Nurse Practitioner Stephanie Harsy. (Doc. 70). Beckemeyer and Harsy argue that Plaintiff failed to fully exhaust his administrative remedies prior to filing this lawsuit, and therefore, the Eighth Amendment claim against them should be dismissed (Count 1). Plaintiff filed a response in opposition to the Motion, and Defendants filed a reply brief. (Docs. 73, 74).

### RELEVANT ALLEGATIONS AND FACTS

Plaintiff was arrested and taken to Franklin County Jail on December 2, 2021. (Doc. 1, p. 50; Doc. 70, p. 2). According to Plaintiff's sworn declaration, on December 5 and 6, 2021, he expressed feeling depressed and suicidal and asked jail staff for "any mental health interventions or crisis-care." (Doc. 73, p. 15). Plaintiff stated that he was not scheduled to meet with a mental health professional or provided mental health care, and so he began engaging in self-harm. (*Id.*). Plaintiff claims that he continued to ask for mental health treatment from various jail staff members, including Harsey and Beckemeyer, and his requests were either ignored or denied. (*Id.* at p. 16-19, 21). From December 6, 2021, through February 13, 2022, Plaintiff attempted to sever his pinky finger, he removed the stitches and splint from his finger after receiving treatment, he

ingested various objects including glass and two e-cigarettes, and he removed the staples from his incision following one of his medical procedures. (Doc. 1, p. 51, 52, 53, 59, 61, 67, 84; *see also* Doc. 1-2, p. 17; Doc. 1-4, p. 10). On February 7, 2022, Plaintiff met with a crisis care mental health professional. (Doc. 70-1, p. 48-56; Doc. 73, p. 21-22). Following the meeting, Plaintiff continued to swallow objects. On February 13, 2022, he was life flighted to Deaconess Hospital and then released from custody. (Doc. 70, p. 2; Doc. 73, p. 24, 26).

During the relevant periods, the Franklin County Jail handbook describes the grievances process as follows:

> You must try to resolve problems with staff or inmates before filing a grievance form. Residents are allowed to file a grievance when subjected to a criminal act by another inmate, a prohibited act by a staff member, abuse, harassment, violation of civil rights, or denied privileges without just cause as specified in this handbook while in custody of the Franklin County Jail.

(Doc. 70-2, p. 13).

Plaintiff states that beginning on December 6, 2021, he was placed on medical observation. (Doc. 73, p. 15). According to Plaintiff, he remained on medical observation for "almost the entirety" of his time at Franklin County Jail until his release in February 2022. (*Id.* at p. 4, 15). While on medical observation, he asserts that he was not allowed to access the kiosk to file a grievance without "staff command approval." (*Id.* at p. 15).

From December 2, 2021, through February 13, 2022, Plaintiff submitted six requests titled "medical" and two requests titled "grievances." (Doc. 70-1, p. 161-166, 195, 196; Doc. 73, p. 6). On December 10, 2021, he used the kiosk to submit medical request #3732659. (Doc. 70-1, p. 166). In the request, Plaintiff grieves that he is not being provided with the same care as other inmates in similar circumstances. (*Id.*). He writes that he believes that he should be released on a recognizance bond while he awaits orthopedic surgery. (*Id.*). Plaintiff asks to be released so that

he can "get proper healthcare and surgery." (*Id.*).

On December 19, 2021, Plaintiff was again allowed to use the kiosk. (Doc. 73, p. 18). He states that he was informed by staff that the kiosk had not been working properly and that there had been a lot of "complaints about the kiosk program's glitching and logging people out." (*Id.*). Plaintiff submitted medical request #3768463 regarding inadequate medical care for his finger. (Doc. 70-1, p. 165). Plaintiff asserts that after submitting the medical request the program froze, "then logged [him] out and would not allow [him] to submit further medical request[s] or grievances." (Doc. 73, p. 18).

On December 29, 2021, Plaintiff was permitted to try and use the kiosk on two separate occasions. (Doc. 73, p. 19). Plaintiff claims that he attempted to file three separate grievances, but the program only allowed him to submit medical requests #3807827 and #3808135. (*Id.*; Doc. 70-1, p. 163, 164). Both medical requests pertain to medical treatment for his finger, specifically medicine for the pain and physical therapy. (Doc. 70-1, p. 163-164).

On January 1, 2022, when Plaintiff tried to submit a grievance using the kiosk, he asserts that the grievance program still would not allow him to submit the grievances. (Doc. 73, p. 20). He was able to submit medical request #3819317, in which he complains that he has tried to submit grievances three times, but the program is "not submitting them," and requests treatment for pain in his finger, wrist, arm, and elbow. (Doc. 70-1, p. 162).

On January 8, 2022, Plaintiff submitted medical request #3846082. (Doc. 70-1, p. 161). In the request, he grieves he is being denied medical care after swallowing e-cigarettes, and he asks to be seen by a doctor at an outside facility. (*Id.*).

On January 19, 2022, Plaintiff was able to successfully submit a grievance. (Doc. 73, p. 20). In grievance #3892260, Plaintiff complains about Correctional Officer Gallagher's dangerous

Page 4 of 12

driving when taking Plaintiff to medical appointments. (Doc. 70-1, p. 195). Plaintiff asserts that after submitting the grievance, Gallagher told him, "You fucked up," and "You will learn soon enough." (Doc. 73, p. 20).

On February 8, 2022, Plaintiff filed grievance #3978165. (Doc. 70-1, p. 196; Doc. 73, p. 22). In the grievance, Plaintiff states that his Eighth Amendment rights to be free from cruel and unusual punishment are being violated. (Doc. 70-1, p. 196). He grieves being placed in the restraint chair for seventy-two hours after returning from surgery at an outside hospital. (*Id.*). Plaintiff also states that he is being housed in a cell with nothing on which to sleep and denied pain medication. (*Id.*). He asks to return to the hospital so that the carabiner he swallowed can be removed. (*Id.*). Plaintiff asserts that after submitting this grievance he was logged out of the program. (Doc. 73, p. 22). He then attempted to use the phone but was prevented by Correctional Officers Gallagher and Lampley. (*Id.*). According to Plaintiff, the officers threw him in his cell and maced him. (*Id.*). Gallagher stated, "Next time make your phone calls first not your grievances." (*Id.*). Plaintiff states that he was not permitted to file grievances or access the kiosk for the remaining time he was at Franklin County Jail. (*Id.* at p. 23).

According to the record, Plaintiff returned to Franklin County Jail at some point and submitted medical and grievance requests from December 14, 2022, through January 20, 2023. (*See generally* Doc. 70-1, p. 192, 159). He also submitted over forty grievances, along with three medical requests and two "request[s] for community mental health liaison," from around May 19, 2023, through July 17, 2023. (*See generally Id.* at p. 67-77, 94-119, 175, 181). He eventually entered the custody of the Illinois Department of Corrections. He was incarcerated at Illinois River Correctional Center at the time he filed the Complaint on November 3, 2023. (Doc. 1).

**LEGAL STANDARDS**

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the non-moving party must identify specific facts in the record showing that genuine issues of material fact exist precluding summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson,* 477 U.S. at 248.

The district court's role on summary judgment is generally not to weigh evidence or judge witness credibility. When presented with a motion for summary judgment on the issue of exhaustion, the district court's approach to factual disputes is different. In *Pavey v. Conley,* 544 F.3d 739, 742 (7th Cir. 2008), the Seventh Circuit instructed district courts to conduct an evidentiary hearing to resolve contested issues of fact concerning exhaustion. The Supreme Court, however, recently partially overruled *Pavey* in *Perttu v. Richards*, 605 U.S. 460, 468 (2025), holding exhaustion disputes must be reserved for a jury if contested facts on exhaustion are intertwined with factual disputes on the merits of a claim. When the district court is presented with a motion for summary judgment on exhaustion with material facts in dispute, it must consider whether intertwinement between exhaustion and the merits requires a jury trial.

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey,* 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir.

2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As a detainee at Franklin County Jail, Plaintiff was required to follow the grievance process set forth in the jail's handbook. That procedure requires an inmate to first attempt to resolve an issue informally by speaking to staff, and it then allows him to file a grievance. (Doc. 70-2, p. 13).

### ANALYSIS

Defendants Nurse Practitioner Harsy and Dr. Beckmeyer argue that Plaintiff failed to exhaust his administrative remedies as to the Eighth Amendment claim against them prior to initiating this lawsuit. First, they contend that the grievances Plaintiff submitted do not sufficiently notify jail officials of the nature of the alleged wrong so that the jail was given "an opportunity to correct issues prior to [this] lawsuit." (Doc. 70, p. 5). Citing eight grievances that were filed between February 8, 2022 and July 3, 2023,[1] Defendants state that none of these grievances are "specifically directed to" either of them. (*Id.* at p. 2, 5). Additionally, they believe "the sole relevant grievance[2] is far too vague in detail." (*Id.* at p. 5). Because the grievances do not contain details concerning denial of mental health care during the time frame alleged in the Complaint giving the jail a fair opportunity to address Plaintiff's complaints, Defendants conclude that the grievances cannot serve to exhaust Plaintiff's claim.

Second, Defendants argue that Plaintiff's grievances are procedurally deficient. (Doc. 70, p. 5). They state that there is no evidence that Plaintiff followed the first step of the grievance

---

[1] Grievance #3978165, #7130892, #7152458, #7186145, #7187503, #7216637, #7227480, and #7233035. (Doc. 74, p. 2; Doc. 70-1, p. 73, 74, 75, 98, 101, 102, 110, 196).

[2] Defendants do not identify which grievance they consider the "sole relevant grievance." (Doc. 70, p. 5).

Page 7 of 12

procedure and attempted to resolve his issues by first speaking directly to staff. (*Id.* at p. 5-6). Defendants point out that there is also no indication that Plaintiff's issues were not resolved or that Plaintiff followed through with any of the further steps included in the Franklin County Jail grievance policy. (*Id.* at 6). Since Plaintiff failed to follow the grievance procedures at Franklin County Jail when filing any of his grievances, they conclude that he has not exhausted. (*Id.*).

Plaintiff first specifies that the exhaustion period relevant to his claims in this case ended on his release date from custody, which was February 13, 2022. (Doc. 73, p. 6, 30). He argues, therefore, any grievances filed when he reentered Franklin County Jail at a later date are irrelevant to whether he exhausted his Eighth Amendment claim against Harsy and Beckemeyer and should be disregarded by the Court. (*Id.*). In light of this time frame, Plaintiff's main argument is that when he was at Franklin County Jail from December 2, 2021, though February 13, 2022, the grievance process was unavailable to him for three reasons. First, Plaintiff asserts that because he was frequently on medical observation, he did not have regular access to the kiosk to submit grievances. (*Id.* at p. 24). Second, when he was permitted to use the kiosk, the grievance program would malfunction, preventing him from submitting grievances. (*Id.* at p. 31). And third, Plaintiff argues that the grievance process was rendered unavailable because he was threatened and then assualted by correctional officers after he submitted grievances on January 19 and February 8, 2022, which serve to dissuade him from utilizing the grievance process. (*Id.* at p. 20-23, 31).

The Court first notes that contrary to the factual allegations put forth by Defendants, the grievances submitted by Plaintiff were not procedurally deficient. There is nothing in the Franklin County Jail handbook which requires an individual in custody to appeal a grievance if the individual is dissatisfied with a grievance response. (*See* Doc. 70, p. 3). The handbook describes a two-step process and is void of any "further steps" that an individual must take once a grievance

is filed. (*See Id.* at p. 5; Doc. 70-2, p. 13). Furthermore, other than the handbook itself, Defendants do not cite to anything in the record to support their contention that Plaintiff did not engage in the first step of the grievance process and try to resolve his problem first with staff. (*See* Doc. 70, p. 2, 3).

Neither the handbook, nor the PLRA for that matter, mandate that a grievance must contain the names of parties complained about in the grievance. (*See* Doc. 70, p. 3). Under the PLRA, all that is required is enough information for the grievance to "alert the prison to the nature of the wrong for which redress is sought," *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005). The Court agrees, however, that none of the grievances submitted by Plaintiff meet this requirement. There is nothing in the grievances cited to by Plaintiff or Defendants indicating that Plaintiff was requesting and being denied mental health treatment not only by Harsy and Beckemeyer, but any security and medical staff, during the time he was in custody at Franklin County Jail from December 2021 through February 2022. Thus, the grievances could not have alerted jail officials to Plaintiff's complaints against Harsy and Beckemeyer regarding lack of mental health care during the time frame alleged in the Complaint. *Roberts v. Neal,* 745 F.3d 232, 236 (7th Cir. 2014).

That being said, Defendants have not met their burden of demonstrating that Plaintiff's administrative remedies were available to him when he attempted to submit grievances concerning denial of mental health care from December 2021 through February 2022. To refute Plaintiff's assertions that he was prevented from accessing the grievance process, Defendants only point to the grievances that were successfully submitted. (Doc. 74, p. 1). They argue that Plaintiff's assertions that he was "not permitted to submit any grievances at any time…is belied by the submission" of the eight grievances filed from February 8, 2022, through July 3, 2023. (*Id.* at p. 1, 2). The fact that Plaintiff was able to successfully submit grievances on January 19 and February

8, 2022, and then over a year later in June and July of 2023, however, "says nothing" about whether Plaintiff was prevented from filing grievances due to his medical observation status and the malfunctioning of the kiosk grievance program on December 19 and 29, 2021, January 1 and 7, 2022,[3] and February 8, 2022. (Doc. 73, p. 18, 19, 20, 22). *See Pyles v. Nwaobasi,* 829 F.3d 860, 868 (7th Cir. 2016). These successfully filed grievances do not contradict Plaintiff's sworn declaration[4] that the kiosk program consistently did not work properly and that he was not allowed to access the kiosk as needed from December 2021 through February 2023. *See Jones v. Lamb,* 124 F.4th at 469.

To be entitled to summary judgment, Defendants "must do more than point to a lack of evidence in the record; rather they must 'establish affirmatively' that the evidence is so one-sided that no reasonable factfinder could find that [the plaintiff] was prevented from exhausting his administrative remedies." *Schaefer v. Bezy*, 336 F. App'x 558, 560 (7th Cir.2009) (quoting *Reserve Supply Corp. v. Owens–Corning Fiberglas Corp.*, 971 F.2d 37, 42 (7th Cir.1992)). Defendants have failed to do so here. They have not presented any competing evidence supporting their version of events and showing that material facts, as put forth by Plaintiff, are disputed. Therefore, Defendants have failed to meet their burden of demonstrating that administrative remedies were "available" to Plaintiff, and the Motion for Summary Judgment is **DENIED.** *See Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022) ("Failure to exhaust is an affirmative defense, so a defendant bears the burden of proof and cannot shift it to require a plaintiff to show that administrative

---

[3] Plaintiff states he filed a medical request on January 7, 2022 (Doc. 73, p. 20). In the record, the medical request is dated January 8, 2022 (Doc. 70-1, p. 161).

[4] *Hernandez v. Lee*, 128 F.4th 870, 866, (7th Cir. 2025) (Plaintiff's sworn declaration is "sufficient to raise a genuine factual dispute at the summary judgment stage."). *See also Jones v. Lamb,* 124 F.4th 463, 468 (7th Cir. 2024) (citing FED. R. CIV. P. 56(c)); *Kaba v. Stepp,* 458 F. 3d 678, 681 (7th Cir. 2006) ("[m]ost affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial." (quoting *Wilson v. McRae's, Inc.,* 413 F.3d 692, 694 (7th Cir. 2005))).

Page 10 of 12

remedies were unavailable."). *See Jackson v. Esser,* 105 F.4th 948, 957 (7th Cir. 2024) (citing

*Smallwood v. Williams,* 59 F.4th 306, 318 (7th Cir. 2023)); *Doss v. Gilkey*, 649 F. Supp. 2d 905,

912 (S.D. Ill. 2009) (when there are no disputed material facts, no hearing is required).

As mentioned above, the Supreme Court has recently held that exhaustion disputes must

be reserved for a jury if contested facts on exhaustion are intertwined with factual disputes on the

merits of a claim. *Perttu,* 605 U.S. at 468. Plaintiff is currently proceeding on a First Amendment

claim against Defendants Skobel, Pemberton, Gallagher, and Lampley for threatening and

assaulting him in retaliation for filing grievances. (Doc. 15, p. 21-22). These allegations appear to

be "intertwined" with Plaintiff's argument that the grievance process was unavailable to him

because of fear of further retaliation by staff. (Doc. 70, p. 24). The Court, however, has found that

Defendants have not met their burden of establishing the jail took "the required reasonable steps"

to make exhaustion available to Plaintiff when he was on medical observation status and due to

the malfunctioning of the kiosk grievance program. Therefore, the Court need not address

Plaintiff's assertions concerning unavailability because of retaliatory conduct by jail staff. This

case, therefore, does not present an exhaustion issue to be presented for the jury pursuant to *Perttu.*

## MOTION FOR SETTLEMENT CONFERENCE

Plaintiff has filed a motion informing the Court that he has sent a settlement demand to the

Defendants represented by Attorney Bleyer, and they have expressed a willingness to engage in

settlement negotiations. Accordingly, Plaintiff's Motion for Settlement Conference is

**GRANTED**. (Doc. 88). This case will be referred to settlement in a separate order. Because this

case will be referred to settlement, the Motion to Compel filed by Plaintiff is **DENIED without**

**prejudice** at this time and may be refiled if the settlement conference does not resolve this matter.

(Doc. 72).

**DISPOSITION**

For the reasons provided, the Motion for Summary Judgment filed by Defendants Harsy and Beckemeyer is **DENIED**. (Doc. 70). The Motion to Compel is **DENIED without prejudice.** (Doc. 72). The Motion for Settlement Conference is **GRANTED**. (Doc. 88)**.** Discovery on the merits will remain stayed while the parties engage in settlement negotiations. The Clerk of Court is **DIRECTED** to send Defendant Tart a copy of this Order.

**IT IS SO ORDERED.**

**DATED: March 17, 2026**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**